229 P.3d 313

STATE of Hawai'i, Respondent/Plaintiff–Appellee

v.

Lillian M. HUSSEIN,
Petitioner/Defendant–Appellant.

No. 28617.

Supreme Court of Hawai'i.

April 21, 2010.

As Corrected April 28, 2010.

Mary Ann Barnard, Honolulu, on the application and briefs for petitioner/defendant-appellant.

Stephen K. Tsushima, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for respondent/plaintiff-appellee.

ACOBA and DUFFY, JJ., and Circuit Judge POLLACK, Assigned by Reason of VACANCY; and MOON, C.J., Concurring Separately and Dissenting, With Whom NAKAYAMA, J., Joins.

Opinion of the Court by ACOBA, J.

We hold that (1) imposing a prison sentence consecutively to "any sentence" of a prior conviction pursuant to Hawai'i Revised Statutes (HRS) § 706–606.5(5) (Supp.2006),[1]

---

**1.** HRS § 706–606.5(1) governs sentencing of repeat offenders, and states as follows:

(1) Notwithstanding section 706–669 and any other law to the contrary, *any person convicted of murder in the second degree, any class A felony, any class B felony, or any of the following class C felonies:* ... section 708–831 relating to theft in the second degree; ... section 708–839.8 relating to identity theft in the third degree; ... section 708–852 relating to forgery in the second degree; ..., any class A felony, any class B felony, or any of the class C felony offenses enumerated above and *who has a prior conviction* or prior convictions for the following felonies, including an attempt to commit the same: ... a class B felony, any of the class C felony offenses enumerated above, or any felony conviction of another jurisdiction, *shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:*
....

(c) Three or more prior felony convictions:
....
(iii) *Where the instant conviction is for a class B felony—ten years;*
(iv) *Where the instant conviction is for a class C felony offense enumerated above-five years.*

(Emphases added.) It may be noted that under HRS § 706–606.5(1)(c)(iii) & (iv), the so-called mandatory minimum sentences as to class B felonies and class C felonies are in effect equal to the maximum indeterminate term of imprisonment for such felonies. *See* HRS § 706–660 (1993) (setting forth ten years as the maximum term for a class B felony and five years for a class C felony). As to whether the mandatory minimum shall be applied concurrently or consecutively to sentences already being served for the previous convictions, HRS § 706–606.5(5) provides that

[t]he sentencing court *may impose the above sentences consecutive to any sentence imposed*

including the lesser of such sentences, is a novel, but accurate, view of the statute; (2) henceforth, the circuit court must state its reasons for imposing a consecutive as opposed to a concurrent sentence under HRS § 706–668.5 (Supp.2008)[2] or HRS § 706–606.5; (3) the requirement that reasons be given in imposing consecutive sentences is closely connected to a probable Hawai'i Rules of Penal Procedure (HRPP) Rule 35 motion filed by Petitioner/Defendant–Appellant Lillian M. Hussein (Petitioner) and, therefore, is not dicta; (4) the Intermediate Court of Appeals (ICA) did not gravely err in rejecting Petitioner's ineffective assistance of counsel claim; and (5) upon entry of judgment on this certiorari application, Petitioner may still seek reduction of her sentence pursuant to HRPP Rule 35 (2008),[3] including, *inter alia*, on the ground set forth in item (1). In

doing so, we affirm the ICA's judgment in *State v. Hussein*, No. 28617, 119 Hawai'i 335, 197 P.3d 787, 2008 WL 5307813 (Haw.App. Dec. 22, 2008) (SDO), but, as noted *supra*, mandate that henceforth, the sentencing court must state its reasons for imposing a consecutive sentence on the record, and additionally clarify that a HRPP Rule 35 motion may be filed subsequent to appellate proceedings, the ICA indicating to the contrary.

## I.

### A.

Petitioner pleaded guilty to thirty-nine counts, including eight counts of identity theft in the second degree (class B felonies), four counts of identity theft in the third degree (class C felonies), fifteen counts of forgery in the second degree (class C felo-

---

on the defendant for a prior conviction, but such sentence shall be imposed concurrent to the sentence imposed for the instant conviction. The court may impose a lesser mandatory minimum period of imprisonment without possibility of parole than that mandated by this section where the court finds that strong mitigating circumstances warrant such action. Strong mitigating circumstances shall include, but shall not be limited to the provisions of section 706–621. The court shall provide a 'written opinion stating its reasons for imposing the lesser sentence.
(Emphasis added.)

2. In 2006, at the time of Petitioner's conviction, HRS § 706–668.5 (1993), which provides the option of entering multiple sentences concurrently or consecutively, provided:

> (1) If multiple terms of imprisonment are imposed on a defendant at the same time, or *if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively.* Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms run consecutively. *Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms run concurrently.*
> (2) The court, *in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706–606.*

(Emphases added.) HRS § 706–668.5(1) was amended in 2008 and now states that

> [i]f multiple terms of imprisonment are imposed on a defendant, whether at the same time or at different times, or if a term of imprisonment is imposed on a defendant who

is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively. *Multiple terms of imprisonment run concurrently unless the court orders or the statute mandates that the terms run consecutively.*

(Emphasis added.) The revised version of the statute therefore embodies a presumption that multiple terms, whether imposed at the same time or at different times, will run concurrently unless the judge orders otherwise. Hence, pursuant to the discussion herein, there is an even stronger rationale under the current version of the statute for requiring the court to give reasons when imposing a consecutive sentence.

HRS 706–606 (1993) provides as follows:

> The court, in determining the particular sentence to be imposed, shall consider:
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) The need for the sentence imposed:
> (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
> (b) To afford adequate deterrence to criminal conduct;
> (c) To protect the public from further crimes of the defendant; and
> (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) The kinds of sentences available; and
> (4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

3. *See infra* note 20 for the text of HRPP Rule 35.

nies), one count of fraudulent use of a credit card (class C felony), and seven counts of theft in the second degree (class C felonies).[4] On January 31, 2007, Respondent/Plaintiff–Appellee State of Hawai'i (Respondent) filed motions for (1) sentencing of repeat offender, pursuant to HRS § 706–606.5, (2) consecutive term sentencing, pursuant to HRS § 706–668.5 (1993) and HRS § 706–606, and (3) extended term sentencing, pursuant to HRS § 706–661 (Supp.2006) and HRS § 706–662(1) and (4)(a) (Supp.2006).[5] At Petitioner's sentencing hearing, the first circuit court (the court)[6] granted Respondent's motions "for a consecutive term and for sentencing of [Petitioner] as a repeat offender" under HRS § 706–606.5(1). *Hussein,* 2008 WL 5307813, at *1. The court denied Respondent's motion for extended terms. *Id.* Petitioner was sentenced to ten years for each of the eight counts of identity theft in the second degree, with a repeat-offender-mandatory-minimum of ten years. *Id.* Petitioner also received five years for each of the twenty-seven class C felony counts. *Id.*

The court ordered the sentences in the instant matter to run concurrently with each other, and to run consecutively to the time that Petitioner was already serving for other matters, as permitted by HRS § 706–606.5(5). *Id.* At the time, Petitioner was concurrently serving a ten-year term and two five-year terms of imprisonment. The sentencing judge ordered the ten-year mandatory minimum for the instant matter to run consecutively to the prior ten-year term, as opposed to the prior five-year term. Thus, by virtue of adding the mandatory minimum repeat offender ten-year term for the instant matter to the previous ten-year term already being served, as recognized by the court, "in all of her cases, [Petitioner] will be serving a [twenty]-year term of incarceration."

### B.

Petitioner appealed her sentence to the ICA. Petitioner raised three points of error on appeal:

(1) the [court] erred in omitting to consider less than fully consecutive mandatory minimum terms, resulting in an excessive overall sentence; and

(2) [Petitioner] was denied effective assistance of sentencing counsel because counsel failed to adequately argue for a strong mitigating circumstances reduction in [Petitioner's] mandatory minimum term and failed to file a motion under [HRPP] Rule 35 to add mitigating factors from prison

---

4. The remaining counts were misdemeanors and petty misdemeanors. *Id.*

5. The relevant version of HRS § 706–661 entitled "Extended terms of imprisonment," provided as follows:

> The court may sentence a person who satisfies the criteria for any of the categories set forth in section 706–662 to an extended term of imprisonment, which shall have a maximum length as follows:
> . . . .
> (3) For a class B felony—indeterminate *twenty-year term of imprisonment;* and
> (4) For a class C felony—indeterminate ten-year term of imprisonment.
> In exercising its discretion on whether to impose the extended term of imprisonment or to use other available sentencing options, the court shall consider whether the extended term is necessary for the protection of the public and whether the extended term is necessary in light of the other factors set forth in section 706–606.
> When ordering an extended term sentence, the court shall impose the maximum length of

imprisonment. The minimum length of imprisonment for an extended term sentence under paragraphs (2), (3), and (4) shall be determined by the Hawaii paroling authority in accordance with section 706–669.

(Emphasis added.) The relevant version of HRS § 706–662 entitled "Criteria for extended terms of imprisonment," provided in relevant part:

> A defendant who has been convicted of a felony qualifies for an extended term of imprisonment under section 706–661 if the convicted defendant satisfies one or ore of the following criteria:
> (1) *The defendant is a persistent offender* in that the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older;
> . . . .
> (4) *The defendant is a multiple offender* in that:
> (a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for any felony[.]

(Emphases added.)

6. The Honorable Dexter D. Del Rosario presided.

rehabilitation programming. [7]

*Hussein,* 2008 WL 5307813, at *1.

The ICA affirmed Petitioner's sentence. *Id.* at *4. With respect to the first point of error, the ICA held that even though the sentencing court did not explicitly state its awareness of a less severe sentencing option, *id.* at *2–3, in regard to running the instant ten year term consecutive to the prior five year term, it "clearly indicated its awareness that the impact of the consecutive sentencing would be for [Petitioner] to serve a twenty[-]year term of imprisonment[,]" *id.* at *3, and did not abuse its discretion in sentencing Petitioner[,] *id.* With respect to the second point of error, the ICA determined that Petitioner's counsel "was within the range of competence demanded of attorneys in criminal cases." *Id.* at *4.

### C.

In her application to this court, Petitioner presents two arguments. First, Petitioner claims that the ICA adopted a "new" interpretation of HRS § 706–606.5(5) on appeal, and gravely erred in presuming that the sentencing court considered it as a sentencing option. Second, Petitioner claims that the ICA's failure to recognize the ineffective assistance of counsel claim constitutes grave error.

### II.

As to Petitioner's first argument, HRS § 706–606.5(1) requires a sentencing court to impose a mandatory minimum term of imprisonment of ten years for a class B felony and five years for an enumerated class C felony, when a defendant has been convicted of three or more prior felonies within a specified time period.[8] HRS § 706–606.5(5) also

provides that "[t]he sentencing court *may* impose the [mandatory minimum] sentences *consecutive to any sentence imposed on the defendant for a prior conviction,* but such sentence shall be imposed concurrent to the sentence imposed for the instant conviction." (Emphases added.)

In the ICA, Petitioner asserted that "[t]he plain meaning of ['any sentence'] include[s] all prison terms for all counts, authorizing the [c]ourt to begin the [ten]-year mandatory minimum term consecutive to the Class C felony [five]-year terms or misdemeanor terms [that were imposed as part of] the prior conviction...." The ICA agreed with Petitioner that HRS § 706–606.5(5) gives a sentencing court "discretion to run a [repeat offender] mandatory minimum sentence consecutive to *any* sentence imposed on a defendant for a prior conviction, not necessarily the longest sentence being served for prior convictions." *Hussein,* 2008 WL 5307813, at *2 (emphasis in original).

■ The plain language of HRS § 706–606.5(5) indicates that a sentencing court may order a repeat offender mandatory minimum term to run consecutively to "any" prior sentence.[9] Petitioner's approach to interpreting the term "any sentence" in HRS § 706–606.5(5) was correct, albeit novel, in the sense that it has not been raised or recognized in any of our prior decisions. Consequently, under a plain reading of HRS § 706–606.5(5), we hold that a sentencing judge may consider imposing a defendant's mandatory minimum sentence consecutively to the shortest of any sentence previously imposed.

### III.

■ A sentencing court must consider all sentencing options, since such consideration

---

7. Petitioner raised as a third point of error that "Cr. No. 06–1–0696 must be dismissed for failure to secure a written waiver of indictment or complaint." The ICA deemed that point of error waived inasmuch as Petitioner conceded in her Reply Memorandum that it was not well-founded. *Hussein,* 2008 WL 5807813, at *1 n. 2.

8. *See supra* note 1.

9. We have said that

where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning. When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.

*State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995) (internal quotation marks and citations omitted).

is mandated by HRS § 706–606(3). *See* HRS § 706–606 ("The court, in determining the particular sentence to be imposed, *shall consider ... [t]he kinds of sentences available*[.]") (Emphasis added.). In addition, it has been noted that "in order to forestall any claims that the court failed to do so, the trial court would be well advised to state clearly on the record that the[ ] alternative [sentencing options] were considered." *State v. Mersberg*, 61 Haw. 1, 2, 594 P.2d 1078, 1078 (1979)[10]; *see also State v. Gaylord*, 78 Hawai'i 127, 144, 890 P.2d 1167, 1184 (1995); *State v. Lau*, 73 Haw. 259, 264, 831 P.2d 523, 526 (1992) ("In order to negate the unnecessary and time-consuming search of the record on appeal, we emphasize and reiterate our caveat in *Mersberg* that where sentencing alternatives are available, the sentencing court should state clearly on the record that such alternatives were considered.").

Thus, when alternative sentencing options are available, an unclear record may result in a remand. *See State v. Gray*, 77 Hawai'i 476, 479, 888 P.2d 376, 380 (App.1995) ("Because it appears that the district court may have been unaware of the applicability of the above-quoted parts of HRS §§ 706–641 and – 642, we vacate the part of the sentence ordering Gray to pay a $1,000 fine and remand that part for resentencing."), *overruled on other grounds by State v. Bolosan*, 78 Hawai'i 86, 92 n. 10, 890 P.2d 673, 679 n. 10 (1995). In the instant case, the ICA noted that, "[a]lthough the [court] did not specifically state that it was aware of a less severe

option, the [c]ourt clearly indicated its awareness that the impact of the consecutive sentencing would be for [Petitioner] to serve a twenty[-]year term of imprisonment." *Hussein*, 2008 WL 5307813, at \*3.

As discussed *infra*, following disposition of this appeal, Petitioner may file a motion for reduction of sentence under HRPP Rule 35(b), and therein explicitly request that the instant sentence run consecutively to the five-year or misdemeanor terms, as opposed to the ten-year sentence, thus reducing the sentence. In this case, we need not reach the question of any potential failure to address all possible sentencing options.[11] The ICA's "conclu[sion] that the [court] did not abuse its discretion in sentencing [Petitioner,]" *id.*, is affirmed, but on the particular facts of this case.

## IV.

### A.

As noted before, Respondent moved for and the court imposed consecutive sentences pursuant to HRS §§ 706–668.5 and –606. HRS § 706–668.5 [12] is the general statute governing the sentencing of a defendant convicted of multiple offenses and provides, in relevant part, that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms run concurrently." Respondent also requested that Petitioner be sentenced to

10. In *Mersberg*, this court said that
[i]n the instant case we are satisfied that the trial court did consider all possible alternative sentences, including the provisions of HRS § 706–667. However, in order to forestall any claims that the court failed to do so, the trial court would be well advised to state clearly on the record that these alternatives were considered. Such a record would be especially helpful and relevant when a young adult defendant is sentenced upon his conviction of a crime. *Mersberg*, 61 Haw. at 2, 594 P.2d at 1078.

11. We observe that sentencing options should be raised and considered at the time of the sentencing hearing.

12. In 1982, HRS § 706–668, the predecessor to HRS § 706–668.5, was amended to provide judges with the specific discretion to impose either concurrent or consecutive sentences.

[Prior to 1982], the law require[d] a judge to sentence a person to terms of imprisonment to run concurrently, giving no *discretion* to judges. This requirement negate[d] the deterrent and punishment aspects of sentencing and in so doing fail[ed] to deter similar future behavior on the part of the particular individual involved. The [1982 amendment] provides that judges have *discretion* to sentence a person to consecutive terms of imprisonment. Your committee feels that judges will exercise their *discretion* in invoking consecutive terms of imprisonment when appropriate as in instances where the defendant committed multiple or subsequent offenses.
*Gaylord*, 78 Hawai'i at 146, 890 P.2d at 1186 (quoting S. Conf. Comm. Rep. No. 5–82, in 1982 Senate Journal, at 874; H. Conf. Comm. Rep. No. 6–82, in 1982 House Journal, at 817 (emphases in original)).

mandatory minimum terms pursuant to HRS § 706–606.5, the repeat offender statute.

In *State v. Kamanaʻo,* 118 Hawaiʻi 210, 188 P.3d 724 (2008), this court examined the distinction between HRS § 706–668 (the prior version of HRS § 668.5), governing the imposition of concurrent and consecutive terms of imprisonment, and HRS § 706–606.5. HRS § 706–668 stated as follows:

> **Concurrent and consecutive terms of imprisonment.**
>
> (1) Except as provided in subsection (2), when multiple sentences of imprisonment are imposed on a person at the same time, or *when a person who is subject to any undischarged term of imprisonment is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall be served concurrently.*

*Kamanaʻo,* 118 Hawaiʻi at 213 n. 9, 188 P.3d at 727 n. 9 (some emphasis omitted) (some emphasis added).

 HRS § 706–668 was repealed in 1986 and replaced with HRS § 706–668.5. Although HRS § 706–668 and HRS § 706–668.5 approach the imposition of concurrent and consecutive sentences differently, HRS § 706–668.5 is, as this court stated in regard to 706–668, "a general statute in the sense that it pertains generally to all offenses and without regard to the type of offender involved." *Id.* at 217, 188 P.3d at 731.

On the other hand, HRS 706–606.5 is a "specific statute in that it deals expressly with sentencing for certain felony convictions in cases involving repeat offenders, such as [the p]etitioner." *Id.* In that connection, this court indicated that HRS 706–606.5 is the controlling statute when a defendant is sentenced as a repeat offender. Relying on the "notwithstanding . . . any other law" language in HRS § 706–606.5, it was said that it is manifest that HRS § 706–606.5 provides for sentencing in specific circumstances whereas HRS § 706–668 is a general rule. *The express language of HRS § 706–606.5, "[n]otwithstanding . . . any*

*other law to the contrary . . . [,]" clearly limits the applicability of HRS § 706–668 in cases involving the "[s]entencing of repeat offenders."* HRS § 706–668 is precisely the type of "law to the contrary" described in HRS § 706–606.5. Thus, reading the two statutes together, it is evident that HRS § 706–668 is the common starting point for sentencing, but that in the specific circumstances presented here, *i.e., where the defendant is a repeat offender, the sentencing court may disregard the general rule and apply the statutory provision that applies to these particular facts.*

*Id.* at 218, 188 P.3d at 732 (emphases added) (brackets and ellipses in original) (footnote omitted). Consequently, the analysis in *Kamanaʻo* with regard to the relationship between HRS § 706–668 and HRS § 706–606.5 applies equally to HRS § 706–668.5. In this case, similar to *Kamanaʻo* then, HRS § 706–606.5 is the controlling statute over HRS § 706–668.5.

However, whereas HRS § 706–668 dictated that "the . . . sentences imposed by the court *shall* be served concurrently" to any term already being served (emphasis added), the current version of the statute, HRS § 706–668.5, gives the court discretion to impose such sentences either concurrently or consecutively. Similarly, HRS § 706–606.5, by stating that the "court *may* impose the above sentences consecutive[ly,]" (emphasis added), allows the court discretion to impose the sentences concurrently or consecutively to pre-existing prison terms. Therefore, the conflict that existed in *Kamanaʻo* has largely been resolved.

Nevertheless, for the reasons discussed in *Kamanaʻo,* HRS § 706–606.5 in this instance is the more specific, and hence, controlling statute. Thus, Petitioner is correct in arguing that the "any sentence" language in HRS § 706–606.5 applies, meaning that her repeat offender sentence may be run consecutively to any term she is already serving.[13]

---

**13.** The maximum indeterminate term for a class B felony is 10 years. *See* HRS § 706–660(1). The mandatory minimum term is a part of the maximum indeterminate term, *see* HRS § 706–606.5(5), and will run consecutively to the prior conviction. *Kamanaʻo,* 118 Hawaiʻi at 218–19, 188 P.3d at 732–33. As observed at note 1, by statute, the mandatory minimum term in Petitioner's case is the same length as the maximum indeterminate term.

### B.

As discussed above, HRS § 706–668.5(2) states that "[t]he court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, *shall consider the factors set forth in section 706–606*." (Emphasis added). *See supra* note 2 (listing factors).[14] Unlike HRS § 706–668.5(2), HRS § 706–606.5 does not refer to any factors to guide a court's exercise of discretion in determining whether a concurrent or consecutive sentence should be imposed. However, this court has stated that "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." *Barnett v. State*, 91 Hawai'i 20, 31, 979 P.2d 1046, 1057 (1999) (internal quotation marks and citation omitted).

 "[S]tatutes [that] relate to sentencing … should be construed *in pari materia*." *Kamana'o*, 118 Hawai'i at 218, 188 P.3d at 732. The nature of consecutive sentences, whether imposed pursuant to HRS § 706–668.5 or pursuant to HRS § 706–606.5, is the same. *See State v. Tauiliili*, 96 Hawai'i 195, 199, 29 P.3d 914, 918 (2001) (noting that consecutive sentences help "to deter future criminal behavior of the defendant, to insure public safety, and to assure just punishment for the crimes committed") (citation omitted); *Gaylord*, 78 Hawai'i at 150, 890 P.2d at 1190 (explaining that indeterminate consecutive terms can only be properly imposed if penal objectives include deterrence and retribution). Accordingly, implicit in the exercise of judicial discretion to impose a consecutive sentence under HRS § 706–606.5 must be consideration of the factors used in governing sentencing discretion under HRS § 706–668.5. The requirement that a court consider the HRS § 706–606 factors in imposing consecutive sentences generally as set forth in HRS § 706–668.5, applies then, to the imposition of consecutive sentences in the repeat offender context under HRS § 706–606.5.

### V.

### A.

 Sentencing decisions are reviewed under the abuse of discretion standard.

[A] sentencing judge generally has broad discretion in imposing a sentence.… And, "[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."

*State v. Kahapea*, 111 Hawai'i 267, 278, 141 P.3d 440, 451 (2006) (quoting *State v. Rauch*, 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000) (citations omitted)) (brackets in original). As in this case, "[a]bsent clear evidence to the contrary, it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706–606[ ]." *Tauiliili*, 96 Hawai'i at 199, 29 P.3d at 918; *see also State v. Rivera*, 106 Hawai'i 146, 163, 102 P.3d 1044, 1061 (2004); *State v. Vellina*, 106 Hawai'i 441, 449, 106 P.3d 364, 372 (2005). Under that standard, the court in this case acted correctly with respect to HRS § 706–606, inasmuch as the court heard argument from both parties as to Respondent's motion for consecutive sentences, took notice of the records and files, and reviewed the pre-sentence report. Under the "clear evidence" standard, we cannot conclude the ICA gravely erred in deciding that the court did not err in imposing a consecutive sentence in this respect.

### B.

We observe, however, that this court has indicated that "[a]lthough there is no requirement for the sentencing court *to state its reasons for imposing sentence, we have urged and strongly recommended that the sentencing court do so[.]*" *Lau*, 73 Haw. at

---

14. Requiring a sentencing court to consider the factors in HRS § 706–606 signaled a shift in legislative policy from the "pre–1986 emphasis on rehabilitation to a post–1986 overriding aspiration 'to afford deterrence and to provide just punishment.'" *Gaylord*, 78 Hawai'i at 150, 890 P.2d at 1190 (quoting S. Conf. Comm. Rep. No. 51–86, in 1986 Senate Journal, at 747–48; H. Conf. Comm. Rep. No. 51–86, in 1986 House Journal, at 937–38).

263, 831 P.2d at 525 (emphasis added); *see also Gaylord*, 78 Hawai'i at 144, 890 P.2d at 1184 ("In order to facilitate appellate review for abuse of a trial court's sentencing discretion, and whenever a defendant is qualified for sentencing alternatives and the sentence imposed is unsatisfactory to the defendant, we strongly encourage and recommend that the sentencing court state its reasons for imposing the particular sentence.") (Quotation marks, brackets, ellipses, and citation omitted.); *State v. Sinagoga*, 81 Hawai'i 421, 429, 918 P.2d 228, 236 (App.1996) (stating that the "preferable practice is for the sentencing court to ... acknowledge on the record that it has considered the factors enumerated in HRS § 706-606 when imposing concurrent or consecutive sentences under HRS § 706-668.5"), *overruled on other grounds by State v. Veikoso*, 102 Hawai'i 219, 226, 74 P.3d 575, 582 (2003); *cf. State v. Valera*, 74 Haw. 424, 435-36, 848 P.2d 376, 381 (1993) (holding that "the sentence ... imposed should be tailored to the particular circumstances of a defendant's case[,]" that "a sentencing judge is required to consider specific statutory factors in determining the sentence to be imposed" under HRS § 706-606 and "that a sentencing judge's discretion is [not] without limits" as "[a] sentencing judge is still required to impose a fair, proper, and just sentence, based upon the crime of which the defendant was convicted") (internal quotation marks and citations omitted).

### C.

The rationales that underlie a defendant's right of presentence allocution, as set forth in *State v. Chow*, 77 Hawai'i 241, 250, 883 P.2d 663, 672 (App.1994), seem especially pertinent when the court renders a consecutive sentence judgment. In *Chow*, the ICA held that denial of a defendant's right to presentence allocution was not harmless, regardless of any potential impact on the defendant's sentence, because, *inter alia*, allocution is an essential part "of the fair treatment which should be accorded a defendant in the sentencing process." *Id.* As part of the "fair treatment," a sentencing court's statement on the record as to its reasons for imposing a consecutive sentence would be meaningful to

the defendant inasmuch as it provides a rationale as to why increased punishment is chosen. No less significant, it was also said in *Chow* that presentence allocution may have the effect of "purging, to some extent, feelings of any felt need for retribution in a victim, a victim's family, or the community as a whole." *Id.* The express statement by the court of its reasons for increased punishment will often provide a similar benefit for the victim and the community at large.

### D.

The American Bar Association (ABA) has recognized the virtues of generally requiring the sentencing court to state on the record its reasons for the sentence imposed:

Standard 18-5.19 Imposition of sentence

(a) The rules of procedure should provide that sentence be imposed in open court in the presence of the offender.

(b) The rules should provide that *a sentencing court, when imposing sentence, should state or summarize the court's findings of fact, should state with care the precise terms of the sentence imposed, and should state the reasons for selection of the type of sanction and the level of severity of the sanction in the sentence.*

(i) The statement of reasons may be relatively concise when the level of severity and type of sanction are consistent with the presumptive sentence, *but the sentencing court should always provide an explanation of the court's reasons sufficient to inform the parties, appellate courts, and the public of the basis for the sentence.*

. . . .

(c) The rules should provide that the sentencing court should integrate the sanctions of a current sentence with the remaining operative sanctions under any prior sentence of the offender.

*ABA Standards for Criminal Justice: Sentencing* at 211-12, Standard 18-5.19, Imposition of Sentence (3d ed.1994) [hereinafter *ABA Standards for Sentencing* ] (emphases added). In regard to the desirability of stating reasons on the record, the Commentary to Standard 18-5.19 provides that

[h]istorically, sentencing courts were not required to and commonly did not state the reasons for their sentencing determinations. Change in that practice has been one of the most basic and necessary reforms of sentencing. Two decades ago, Judge Marvin Frankel expressed the rationale for change in fundamental terms:

> The question "Why?" states a primitive and insistent human need. The small child, punished or deprived, demands an explanation. The existence of the rationale may not make the hurt pleasant, or even just. *But the absence, or refusal, of reasons is a hallmark of injustice* .... The despot is not bound by rules. He need not account for what he does. Criminal sentences, as our judges commonly pronounce them, are in these vital aspects tyrannical.

These Standards agree with Judge Frankel's assessment that sentencing courts, when imposing a sentence, should state their reasons for selection of the type of sanction and the level of severity of sanction in the sentences imposed.

> ... *Explanations given by sentencing courts are vital to achievement of appropriate individualization of sentences with a sentencing system that is reasonably determinate and that seeks to avoid unwarranted disparities in sentences imposed.*

> *The sentencing court's statement of reasons for the sentence imposed is, of course, essential to meaningful appellate review of sentences.* A statement of reasons for sentence may be especially helpful when a sentence is challenged on appeal as possibly based on an improper factor.

*Id.* at 212–13, Commentary to Standard 18–5.19 (footnotes and citations omitted) (emphases added).[15] The Commentary specifically references consecutive sentencing in a footnote, stating that "[t]he imposition of consecutive sentences of total confinement, where such sentences are permitted, *should be accompanied by a statement of reasons for the selection of consecutive terms.*" *Id.* at 213 n. 2 (emphasis added) (citation omitted). Thus, the ABA Standards and accompanying Commentary supporting a requirement that the sentencing court provide reasons for its sentence, appear even more significant when a court chooses to order a *consecutive* sentence.

## E.

Other jurisdictions, based *inter alia* on the rationales set forth by the ABA, have adopted a requirement that the sentencing court state reasons on the record for imposing sentences consecutively. In *State v. Hall,* 255 Wis.2d 662, 648 N.W.2d 41, 44 (App.2002), the Wisconsin appellate court determined that "[b]ecause the trial court gave *inadequate reasons* for the [consecutive] sentence imposed, [the defendant's] sentence *is the product of an erroneous exercise of discretion*[,]" because " '[a] good sentence is one which can be reasonably explained.' " (Quoting *McCleary v. State,* 49 Wis.2d 263, 182 N.W.2d 512, 522 (1971)). With regard to consecutive sentencing, that court stated that

> [i]n situations where, as here, the defendant is convicted of more than one offense, the sentencing court may impose consecutive rather than concurrent sentences. *In sentencing a defendant to consecutive sentences, the trial court must provide sufficient justification for such sentences* and apply the same factors concerning the length of a sentence to its determination of

---

**15.** While we do not require specific findings of fact in this context, the ABA Standards recognize that findings of fact promote reasoned decisions and meaningful appellate review:

> The requirement of findings of fact serves multiple purposes. First, the discipline of thought necessary for a court's reasoned determination of a sentence is fostered by the process of articulation of the factual bases for the judgment. Second, findings of fact are essential to meaningful appellate review of sentences. Third, if the sentencing phase of a case is resumed later, whether as a result of remand following appeal or otherwise, further proceedings are facilitated by having a record of the factual findings on which the original sentence had been imposed. Fourth, sentencing court's findings may be of considerable value to the agency performing the intermediate function when it carries out its duties to monitor and evaluate patterns of sentencing.

> *ABA Standards for Sentencing* at 209, Commentary to Standard 18–5.18.

whether sentences should be served concurrently or consecutively.

*Id.* at 45 (emphasis added) (citations omitted).[16] That court quoted the ABA standards as stating that " '[t]he imposition of consecutive sentences of total confinement, where such sentences are permitted, should be accompanied by a statement of reasons for the selection of consecutive terms.' " *Id.* at 47 (quoting *ABA Standards for Sentencing* at 213 n. 2, Commentary to Standard 18-5.19, Imposition of Sentence).

Several other states have held that a statement of reasons is essential to imposition of consecutive versus concurrent prison terms. Some states have implemented the requirement by statute. *See, e.g., People v. Champion,* 9 Cal.4th 879, 39 Cal.Rptr.2d 547, 891 P.2d 93, 124 (1995) (holding that "the trial court erred in not giving reasons for imposing consecutive sentences[,]" because "[t]he decision to impose consecutive sentences is . . . a 'sentence choice' for which, under the determinate sentencing law, the trial court must give reasons"), *overruled on another point in People v. Combs,* 34 Cal.4th 821, 22 Cal.Rptr.3d 61, 101 P.3d 1007, 1033 (2004); *State v. Boudreaux,* 945 So.2d 898, 902 (La. App. 2 Cir.2006) ("When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively." (Citing La. C. Cr. P. art. 883.)); *State v. Murphy,* No. M2007-02416-CCA-R3-CD, 2009 WL 1643442, at *11 (Tenn. Crim.App. June 12, 2009) (unpublished opinion) (holding that "the trial court erred by imposing consecutive sentencing without any findings of whether the defendant met the statutory criteria set out in Tennessee Code Annotated section 40-35-115, or that there were any other statutorily mandated reasons to justify consecutive sentencing"). Others have done so by judicial determination *See, e.g., Williams v. State,* 891 N.E.2d 621, 630 (Ind.Ct.App.2008) (holding that "[a] trial court is required to state its reasons for imposing consecutive sentences or enhanced terms"); *State v. Moore,* No. 08-0147, 2008 WL 5412315, at *2 (Iowa Ct.App. Dec.31, 2008) (where sentencing court imposed sentences consecutively, stating that "[t]he district court must demonstrate its exercise of discretion by stating upon the record the reasons for the particular sentence imposed") (citation omitted); *State v. Gallagher,* 286 N.J.Super. 1, 668 A.2d 55, 66 (App.Div.1995) (holding that "the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision").

## VI.

Additionally, as the facts indicate, Respondent also moved for an extended term of imprisonment pursuant to HRS § 706-661 and HRS § 706-662(1) and (4)(a). Under the United States Supreme Court's holding in *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), that motion was subject to the requirements of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *See Ap-*

**16.** The *Hall* court recognized that the sentencing court has broad discretion, but also that the court must support that discretion with stated reasons:

Generally, there is a strong public policy against interfering with the sentencing discretion of the trial court. Thus, sentencing is left to the discretion of the trial court, and our review is limited to determining whether the trial court erroneously exercised that discretion. Nevertheless, the supreme court has made it clear that *an [erroneous exercise] of discretion might be found under the following circumstances: (1) [f]ailure to state on the record the relevant and material factors which influenced the court's decision.*

*Hall,* 648 N.W.2d at 45 (emphasis added) (internal quotation marks and citation omitted). Thus, that court concluded that discretion "must be exercised on a rational and explainable basis." *Id.* The *Hall* court quoted the Wisconsin Supreme Court as having explained discretion as follows:

[T]here must be evidence that discretion was in fact exercised. Discretion is not synonymous with decision-making. Rather, *the term contemplates a process of reasoning.* This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards. [T]here should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth. *Id.* (quoting *McCleary,* 182 N.W.2d at 512) (emphases added).

*prendi*, 530 U.S. at 494 n. 19, 489, 120 S.Ct. 2348 (holding that a defendant's sentence based on the sentencing court's own factual finding was unconstitutional because "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict," and "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *see also Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (holding that a sentence of thirty-seven months beyond the statutory maximum imposed by a judge based on the judge's factual finding of "deliberate cruelty" violated the rule set forth in *Apprendi* and stating that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant").

A.

In *State v. Maugaotega*, 107 Hawai'i 399, 402, 114 P.3d 905, 908 (2005), *judgment vacated by Maugaotega v. Hawaii*, 549 U.S. 1191, 127 S.Ct. 1210, 167 L.Ed.2d 37 (2007) (*Maugaotega I*), this court held that "Hawaii's extended term sentencing scheme[,]" which required judges to make certain findings in order to impose an extended sentence, did "not run afoul of *Apprendi*[.]" The dissent in *Maugaotega I* disagreed, concluding that "[b]ased on the dissent in *Rivera*, ... the extended terms of imprisonment [should be vacated] and remand[ed] for resentencing in conformance with *Apprendi*." 107 Hawai'i at 411, 114 P.3d at 917 (Acoba,

J., dissenting, joined by Duffy, J.). In *Rivera*, the dissent had argued that Hawaii's extended term sentencing scheme was subject to the requirements of *Apprendi* and *Blakely*, because "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment ... and the judge exceeds his [or her] proper authority, and the sentence must be vacated." 106 Hawai'i at 171, 102 P.3d at 1069 (internal quotation marks and citation omitted).

In *Cunningham*, the United States Supreme Court in effect overruled this court's decision in *Maugaotega I*, and confirmed the determination of the dissenting opinion in *Rivera* and *Maugaotega I*, that Hawaii's extended sentencing scheme is subject to the requirements of *Apprendi*. *See Cunningham*, 549 U.S. at 274, 127 S.Ct. 856; *Maugaotega*, 549 U.S. at 1191, 127 S.Ct. 1210. Thus, *Maugaotega I* was vacated by the Supreme Court and remanded to this court for further consideration in light of *Cunningham*. *See Maugaotega*, 549 U.S. at 1191, 127 S.Ct. 1210.

On remand, this court held that Hawaii's extended sentencing term statute, HRS § 706–662, "is unconstitutional on its face." *State v. Maugaotega*, 115 Hawai'i 432, 447, 168 P.3d 562, 577 (2007) (*Maugaotega II*).[17] It was concluded that "*Cunningham* [e]liminated [t]he [r]ole [o]f [t]he [s]entencing [j]udge [i]n [f]inding [f]acts [n]ecessary [f]or [t]he [i]mposition [o]f [a]n [e]xtended [t]erm [o]f [i]mprisonment [o]utside [t]he [m]aximum [a]uthorized [s]olely [b]y [t]he [j]ury's [v]erdict." *Id.* at 443, 168 P.3d at 573. Thus, it is now manifest that the jury requirements of *Apprendi* are applicable to the findings necessary to impose an extended

---

**17.** The concurrence in part and dissent in part, asserted that

contrary to the majority's position, I would vacate the sentences and the judgments thereon and remand for a jury trial, unless waived by Appellant, on the motion for extended terms filed by Plaintiff–Appellee State of Hawai'i (the prosecution). This disposition on remand is required because (1) [HRS] §§ 706–661 and –662, the extended term sentencing

statutes, are not rendered unconstitutional in their entirety under *Cunningham*, (2) the legislature expressly intended to preserve extended term sentencing, (3) such a disposition is approved by *Cunningham*, and (4) the facts of this appeal warrant it.

115 Hawai'i at 451, 168 P.3d at 581 (Acoba, J., concurring and dissenting, joined by Duffy, J.) (footnote omitted).

sentence under HRS § 706–662.[18]

**B.**

Foreseeably, the less burdensome procedural alternative of consecutive term sentencing may be viewed as a way to obtain the same sentencing result as would be reached in extended sentences, but without the necessity of convening the more lengthy jury procedures required by *Apprendi.* *See Kahapea*, 111 Hawai'i at 285, 141 P.3d at 458 (Acoba, J., concurring in part, joined by Duffy, J.) ("It would appear plain, then, that our sentencing law does not sanction the circumvention by a judge of the extended term sentencing procedure by resort to the consecutive term provision. Such subterfuge would violate the provisions of the penal code

and potentially raise serious due process considerations."). Coupled requests for consecutive sentencing and extended term sentencing are evident in appeals that have been brought before this court and the ICA.[19]

Relatedly, in *Oregon v. Ice*, 555 U.S.——, ——, 129 S.Ct. 711, 714, 172 L.Ed.2d 517 (2009), an Oregon statute required judges to impose concurrent sentences for offenses arising out of a continuous course of conduct unless they found certain "predicate facts" allowing them to impose consecutive sentences. A five-to-four majority of the United States Supreme Court upheld the judicial determination of predicate facts in the imposition of a consecutive sentence against the claim that the jury fact-finding requirements set forth in *Apprendi* and *Blakely* applied to the determination of such facts. *Id.*

**18.** It may be noted that, "[e]ffective October 31, 2007, the legislature [ ] amended HRS § 706–662 as part of its reform of the state's extended sentencing scheme to bring it into compliance with *Apprendi* and [*Cunningham* ]. The amended version of HRS § 706–662 provides in relevant part:

> **Criteria for extended terms of imprisonment.** A defendant who has been convicted of a felony may be subject to an extended term of imprisonment under HRS § 706–661, if it is proven beyond a reasonable doubt that an extended term of imprisonment is necessary for the protection of the public and that the convicted defendant satisfies one or more of the following criteria....

*State v. Jess*, 117 Hawai'i 381, 388 n. 4, 184 P.3d 133, 140 n. 4 (2008) (brackets and citation omitted). Additionally, this court in *Jess* judicially reformed the former version of HRS § 706–662 to allow courts to impanel a jury to make the necessary findings under HRS § 706–662 in order to be in compliance with *Apprendi. See id.* at 388–89, 184 P.3d at 140–41 (holding that "the circuit court would act within its discretion if, pursuant to HRS §§ 706–662(1) and 706–662(4) (Supp.1996), it empaneled a jury to make a factual finding as to whether the prosecution has proved beyond a reasonable doubt that a defendant's commitment for an extended term or terms of imprisonment is necessary for the protection of the public").

**19.** A quick review of recent cases supports a conclusion that Respondent very frequently moves for both extended and consecutive terms in the same case, and that it is not uncommon for the court to *deny* a motion for an extended term, while *granting* a motion for consecutive terms. *See, e.g., Kamana'o*, 118 Hawai'i at 212, 188 P.3d at 726 (noting that following the federal district court's vacation of extended term sen-

tences, upon resentencing, the defendant was sentenced to consecutive terms); *Wilderman v. State*, No. 26970, 118 Hawai'i 209, 187 P.3d 593, 2008 WL 281272, at *3 (Hawai'i Jan. 21, 2008)(SDO) (noting that the defendant claimed on appeal that "[t]he court abused its discretion in *sentencing him to consecutive terms of imprisonment at the same time it denied the State's motion for an extended term of imprisonment* ") (emphasis added); *State v. Pavich*, 119 Hawai'i 74, 87, 193 P.3d 1274, 1287 (App.2008) (stating that, based upon the record, "[the defendant's] attorney was disappointed *when the State moved for extended terms of imprisonment and for consecutive sentences* ") (emphasis added); *Loher v. State*, 118 Hawai'i 522, 527, 193 P.3d 438, 443 (App.2008) (stating that "the Circuit Court granted the *State's motions to sentence [the defendant] to an extended term, consecutive sentences*, and as a repeat offender") (emphasis added); *State v. Myklebust*, No. 28756, 119 Hawai'i 322, 196 P.3d 324, 2008 WL 5053561, at *2 (Haw.App. Nov. 28, 2008) (SDO) (noting that the defendant's counsel stated that "[o]ne of the things that [the judge] indicated during [a] conference was that if [the defendant] went to trial and he was convicted[,] he was looking at *an extended term and/or consecutive sentencing* ") (emphasis added); *Penaflor v. State*, No. 28527, 118 Hawai'i 318, 188 P.3d 832, 2008 WL 2503259, at *1 (Haw.App. Jun. 24, 2008) (SDO) (noting that "[t]he *circuit court sentenced [the defendant] to consecutive terms of imprisonment but denied the State of Hawai'i's motion for extended term sentencing* ") (emphasis added) (footnote omitted); *Salis v. State*, No. 27451, 118 Hawai'i 209, 187 P.3d 593, 2008 WL 1829513, at *1 & *1 n. 3 (Haw.App. Apr. 23, 2008) (mem.) (noting that the *judge imposed consecutive terms*, and stating that "[t]he State also filed a *Motion for Extended Term* of Imprisonment in 97–0973, ... but this motion *was denied* ") (emphases added).

The majority decided that "twin considerations-historical practice and respect for state sovereignty-counsel against extending *Apprendi's* rule to the imposition of sentences for discrete crimes." *Id.* at ——, 129 S.Ct. at 717. According to the majority, "[t]he decision to impose sentences consecutively is not within the jury function that 'extends down centuries into the common law.'" *Id.* (quoting *Apprendi,* 530 U.S. at 477, 120 S.Ct. 2348). On the other hand, the dissent argued that "Oregon's sentencing scheme allows judges rather than juries to find the facts necessary to commit defendants to longer prison sentences and thus directly contradicts what we held eight years ago [in *Apprendi* ] and have reaffirmed several times since." *Id.* at ——, 129 S.Ct. at 720 (Scalia, J., dissenting, joined by Roberts, C.J., Souter, and Thomas, JJ.).

In regard to consecutive sentences, the majority noted that states have generally taken three approaches related to the imposition of such sentences: (1) "[m]ost [s]tates continue the common law-tradition[, where t]hey entrust to judges' unfettered discretion the decision whether sentences for discrete offenses shall be served consecutively or concurrently"; (2) "[i]n some [s]tates, sentences for multiple offenses are presumed to run consecutively, but sentencing judges may order concurrent sentences upon finding cause therefor"; and (3) "[o]ther [s]tates … constrain judges' discretion by requiring them to find certain facts before imposing consecutive, rather than concurrent, sentences." *Id.* at ——, 129 S.Ct. at 714. According to the Supreme Court, the first two approaches do not "transgress[ ] the Sixth Amendment." *Id.* In *Ice,* "[t]he sole issue in dispute [was] whether the Sixth Amendment, as construed in *Apprendi* and *Blakely,* precludes the [third approach]." *Id.*

The mandated consideration of factors in HRS § 706–606 by the sentencing judge is akin to the third approach discussed in *Ice*— that in order to impose a consecutive sentence, the judge must "find certain facts." As noted in *Ice,* "[l]imiting judicial discretion to impose consecutive sentences serves the 'salutary objectives' of promoting sentences proportionate to 'the gravity of the offense,'

and of reducing disparities in sentence length." *Id.* at ——, 129 S.Ct. at 719 (citations omitted). In many instances the term of imprisonment would be the same under consecutive term sentencing as under extended term sentencing. Consequently, if consecutive term sentencing may be employed as a possible alternative to extended sentencing and the jury fact-finding requirements imposed in *Apprendi,* such a possibility warrants closer scrutiny of consecutive sentences.

## VII.

In this case, a concurrent sentence would have resulted in ten years of imprisonment, as opposed to the twenty years that Petitioner received as a consequence of running the terms consecutively. Although to this point we have recognized the benefits of a statement of reasons but not mandated it, we now conclude, based on the reasons and circumstances set forth *supra,* that a court must state its reasons as to why a consecutive sentence rather than a concurrent one was required.

Such a requirement serves dual purposes. First, reasons identify the facts or circumstances within the range of statutory factors that a court considers important in determining that a consecutive sentence is appropriate. An express statement, which evinces not merely consideration of the factors, but recites the specific circumstances that led the court to impose sentences consecutively in a particular case, provides a meaningful rationale to the defendant, the victim, and the public.

Second, reasons provide the conclusions drawn by the court from consideration of all the facts that pertain to the statutory factors. It is vital, for example, for the defendant to be specifically informed that the court has concluded that he or she is dangerous to the safety of the public, or poses an unacceptable risk of re-offending, or that rehabilitation appears unlikely due to his or her lack of motivation and a failure to demonstrate any interest in treatment, or that the multiplicity of offenses and victims and the impact upon the victims' lives warrant imposition of a consecutive term. Hence, reasons confirm

for the defendant, the victim, the public, and the appellate court, that the decision to impose consecutive sentences was deliberate, rational, and fair.

Consequently, after the filing date of the judgment herein, circuit courts must state on the record at the time of sentencing the reasons for imposing a consecutive sentence.

## VIII.

As observed, Petitioner's second argument is that she was denied effective assistance of counsel at her sentencing hearings. This court has stated the appellant's burden in establishing ineffective assistance of counsel is as follows:

> The burden of establishing ineffective assistance of counsel rests upon the appellant. [The appellant's] burden is twofold: First, the appellant must establish specific errors or omissions of defense counsel reflecting counsel's lack of skill, judgment or diligence. Second, the appellant must establish that these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.

**20.** HRPP Rule 35 provides:

(a) **Correction of Illegal Sentence.** The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. A motion made by a defendant to correct an illegal sentence more than 90 days after the sentence is imposed shall be made pursuant to Rule 40 of these rules. A motion to correct a sentence that is made within the 90 day time period shall empower the court to act on such motion even though the time period has expired.

(b) **Reduction of Sentence.** *The court may reduce a sentence within 90 days after the sentence is imposed, or within 90 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal,* or within 90 days after entry of any order or judgment of the Supreme Court of the United States denying review of, or having the effect of upholding the judgment of conviction. A motion to reduce a sentence that is made within the time prior shall empower the court to act on such motion even though the time period has expired. The filing of a notice of appeal shall not deprive the court of jurisdiction to entertain a timely motion to reduce a sentence.

(Emphasis added.)

*State v. Antone,* 62 Haw. 346, 348–49, 615 P.2d 101, 101–04 (1980) (citations omitted). First, Petitioner challenges her counsel's "meager pre-sentence preparation and argument." Second, Petitioner alludes to her counsel's failure to file a HRPP Rule 35 motion for reduction of sentence,[20] "to develop post-sentencing strong mitigating factors to support reconsideration[.]"

### A.

■ As to the first claim, Petitioner contends that her counsel was ineffective for failing to cite certain mitigating factors in a written sentencing memorandum.[21] However, the ICA determined that both Petitioner and Petitioner's counsel presented mitigating circumstances at the sentencing hearing:

> At the sentencing hearing on April 27, 2007, *[Petitioner] addressed the court and stated "I have no excuse for what I have done and I'm taking full responsibility for my action. I'm just asking for a fair sentence and I know whatever you give me will be fair." [Petitioner's] (prior) defense counsel argued that there were mitigating circumstances which should reduce her sentence within the context and in harmony with [Petitioner] taking full responsi-*

**21.** Petitioner points to the following mitigating factors as having been omitted:

[1] The offenses [for which she was convicted] are crimes against property which caused no physical harm or injury to another person.
[2] [Petitioner] has accepted responsibility for her actions by waiving indictment, changing her plea, and stipulating to her repeat offender status. . . .
[3] [Petitioner] has a documented history of drug use and homelessness which led to the commission of the offenses.
[4] [Petitioner] is educated and intelligent, and has the ability to pursue gainful employment.
[5] [Petitioner] has expressed genuine remorse and apologized to the victims.
[6] [Petitioner] has work experience, with a history of employment as an administrative assistant, secretary, and receptionist.
[7] While incarcerated [Petitioner] has participated in X in an apparent sincere effort to improve her chances of gainful employment.
[8] While incarcerated [Petitioner] has participated in X to address her substance abuse problem.

*bility for her actions.* We conclude that, notwithstanding the fact that counsel did not file a written sentencing memorandum and [*Petitioner*] now submits that counsel could have better argued the mitigating circumstances, [Petitioner's] counsel's assistance was within the range of competence demanded of attorneys in criminal cases. Therefore, [Petitioner] was not provided with ineffective assistance of counsel.

*Hussein*, 2008 WL 5307813, at \*4 (ellipsis and citation omitted) (emphases added). The ICA further noted that mitigating factors were presented in the presentence report (PSI), which was reviewed by the sentencing judge:

> As acknowledged by [Petitioner], "mitigating factors," including [Petitioner's] remorse and taking responsibility for her actions, were argued at the sentencing hearing.... The [PSI] referenced in [Petitioner's] Opening Brief-which the [c]ourt stated that it considered-referenced the substance abuse and treatment issues raised by [Petitioner] on this appeal.

*Id.* at \*3.

Thus, as to the first claim, we agree with the ICA inasmuch as all of the factors alleged by Petitioner were presented to the court for consideration, either in the PSI, or in court at the sentencing hearing. At Petitioner's sentencing hearing, the judge stated, "The court will take judicial notice of the records and the files. *The court has reviewed the [PSI].*" (Emphasis added.) The sentencing judge then, was made aware of the mitigating factors cited by Petitioner, either through the PSI or in open court at the sentencing hearing.

#### B.

As to Petitioner's second claim, the ICA, analogizing to Federal Rule of Criminal Procedure (Fed.R.Crim.P.) Rule 35,[22] noted that HRPP Rule 35

> "does not suggest that a motion should be filed automatically in every case. To the

contrary, ... such a motion would normally be accompanied by evidence, information, and argument to support a reduction in sentence. No court has held that failure to file such a motion automatically constitutes ineffective assistance of counsel."

*Id.* at \*4 (quoting *Shraiar v. United States*, 736 F.2d 817, 818 (1st Cir.1984)) (internal quotation marks omitted). Based on that rationale, the ICA "reject[ed] [Petitioner's] argument that defense counsel's failure to file an HRPP Rule 35 motion to develop additional mitigating factors rendered counsel's representation constitutionally ineffective in this case." *Id.*

■ We affirm the result reached by the ICA inasmuch as it appears that all mitigating factors that were known at the time of sentencing were presented to the sentencing court, and, therefore, counsel's decision not to file a HRPP Rule 35 motion post-sentencing to present those same factors did not fall outside the range of competence expected of criminal lawyers. Also relevant to our affirmance of the ICA is the fact that Petitioner discharged sentencing counsel three weeks subsequent to her sentencing. Thus, inasmuch as Petitioner argues that "[a HRPP] Rule 35 motion with a hearing several months after sentence would have given [Petitioner] the opportunity to develop additional strong mitigating factors based upon taking advantage of educational courses, workline duties, substance abuse programming, and so forth[,]" that argument is inapplicable to Petitioner's sentencing counsel as he was no longer retained by Petitioner "several months after sentence."

#### IX.

However, we find it necessary to clarify the ICA's opinion with respect to HRPP Rule 35. The ICA rejected Petitioner's argument that counsel was ineffective for not filing a HRPP Rule 35 motion "to develop additional mitigating factors." *Hussein*, 2008 WL 5307813, at \*4. The ICA focused exclusively on the fact that "[R]ule [35] does not suggest that a motion should be filed

---

**22.** The ICA recognized, as we have herein, that "Fed.R.Crim.P. 35(b) is similar to a Motion for Reduced Sentence under HRPP Rule 35(b) ex-

cept the federal rule provides 120 days to file the motion, whereas the Hawai'i rule provides 90 days." *Hussein*, 2008 WL 5307813, at \*4 n. 3.

automatically in every case." *Id.* The ICA never considered, intimated, or suggested in any way that a Rule 35 motion could still be timely filed. Because the ICA ruled on counsel's failure to file a Rule 35 motion *prior* to initiation of appellate proceedings, one may be left with the impression that the time for filing had expired. Indeed, subsequent to the ICA's SDO, Petitioner indicates that "[t]he Hawai'i rule retains the [c]ourt's jurisdiction to reduce a sentence *if the motion is filed prior to the notice of appeal*[,]" and thus, "due diligence required such a motion." (Emphasis added.) Petitioner therefore apparently believes that because counsel failed to file a HRPP Rule 35 motion, she has lost that opportunity.

### A.

But, according to HRPP Rule 35(b), "[t]he court may reduce a sentence within 90 days after the sentence is imposed, or within 90 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal...." In *State v. Rodrigues,* 68 Haw. 124, 133, 706 P.2d 1293, 1300 (1985), this court affirmed the court's sentencing decision, deciding "[t]hat the circuit court mistakenly concluded the defendant had been convicted on three, rather than two, prior occasions is of no consequence; he was still subject to a ten-year mandatory minimum term of imprisonment."

▪ It was noted, however, that pursuant to HRPP Rule 35, the sentence could be reduced upon receipt of final judgment from this court:

> The record indicates the circuit court "reluctantly ... grant[ed] the motion to have the defendant sentenced as a repeat offender." HRS § 706–606.5(3), however, vests the court with authority to impose a

lesser mandatory minimum sentence where "strong mitigating circumstances warrant such action." *Since [HRPP Rule 35] permits the reduction of a sentence upon receipt of this court's mandate following affirmance of the judgment, the circuit court will be able to consider the exercise of its discretionary power if such action is warranted.*

*Id.* at 133 n. 7, 706 P.2d at 1300 n. 7 (emphasis added) (ellipsis and brackets in original). This court and the ICA have affirmed the proposition that HRPP Rule 35 allows for reduction of a sentence following appeal. *See State v. Putnam,* 93 Hawai'i 362, 365 n. 4, 3 P.3d 1239, 1242 n. 4 (2000) ("[HRPP] Rule 35 (1980) allows a court to reduce a sentence within ninety days of a judgment on appeal affirming the judgment."); *State v. LeVasseur,* 1 Haw.App. 19, 29, 613 P.2d 1328, 1335 (1980) ("[W]e point out that under [HRPP Rule 35] it is open to the court below to reduce the sentence within ninety (90) days of the receipt of our mandate if it sees fit."); *see also State v. Gomes,* 107 Hawai'i 308, 310–11, 113 P.3d 184, 186–87 (2005) (noting that the petitioner filed a HRPP Rule 35 motion subsequent to this court's affirmance of the judgment).[23]

### B.

The foregoing interpretation of HRPP Rule 35 adheres to the plain language of Rule 35(a), which allows the correction of an illegal sentence "at any time" within 90 days "after the sentence is imposed[,]" and Rule 35(b), which allows the reduction of a sentence "within 90 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal[.]" This construction of HRPP Rule 35 is supported by the interpretation given Fed. R.Crim.P. Rule 35 (1983),[24] which, prior to its

---

**23.** It should be noted that until this court acts with regard to Petitioner's application for certiorari, there is no final judgment in this appeal. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 41 (2008); *Rapozo v. Better Hearing of Hawaii, LLC,* 120 Hawai'i 257, 260, 204 P.3d 476, 479 (2009) ("An appeal is generally considered to be 'a continuation of an original proceeding and not a new action.'" (Quoting *Leslie v. Estate of Tavares,* 93 Hawai'i 1, 4, 994 P.2d 1047, 1050 (2000).)); *see also* HRAP Rule 2.1(b) (2008)

("'Appeal' includes every proceeding in the Hawai'i appellate courts other than an original action[.]"). Because Petitioner's application for certiorari was timely filed, it stayed the finality of the ICA decision. *See* HRAP Rule 41.

**24.** Fed.R.Crim.P. Rule 35 (1983) provided:

(a) Correction of Sentence. The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal man-

amendment in 1985, was substantially similar to HRPP Rule 35.[25]

### C.

Thus, inasmuch as the ICA's SDO may certainly be construed as concluding that a HRPP Rule 35 motion is no longer viable, we find it necessary to clarify that Petitioner may still file a HRPP Rule 35 motion subsequent to this appeal. *See State v. Mikasa*, 111 Hawai'i 1, 1, 135 P.3d 1044, 1044 (2006) (affirming ICA decision, but granting certiorari "to clarify the application by [the ICA] of the law relevant to a defendant's claim that a sentencing court relied on an uncharged crime in imposing sentence"); *Nacino v. Koller*, 101 Hawai'i 466, 467, 71 P.3d 417, 418 (2003) (affirming the ICA, but granting certiorari "to clarify the law regarding [HRS] § 346–37, the statute involved"); *Korsak v. Hawai'i Permanente Med. Group*, 94 Hawai'i 297, 300, 12 P.3d 1238, 1241 (2000) (granting certiorari "to clarify several aspects of the ICA opinion"); *cf. Ranches v. City and County of Honolulu*, 115 Hawai'i 462, 464–65, 168 P.3d 592, 594–95 (2007) ("The requirements in HRS § 602–59(b) are 'directed only to the application for the writ. It is not descriptive of the scope of review determinative of [this court's] decision to grant or deny certiorari. [This court's] power in that regard is intended to simply be discretionary.'" (Quoting *State v. Chong*, 86 Hawai'i 282, 283 n. 1, 949 P.2d 122, 123 n. 1 (1997).)). Hence, under HRPP Rule 35(b), Petitioner may file a HRPP Rule 35 motion

for reduction of her sentence although the judgment of the court is affirmed.

### X.

The four arguments raised by the dissent are (1) "the majority's entire discussion of its new 'rule' is wholly unnecessary to dispose of this case and, thus, constitutes *obiter dicta*[,]" (2) "mandating the sentencing court to state specific reasons when imposing a consecutive sentence ... violates the doctrine of *stare decisis*[,]" (3) "[requiring courts] to state specific reasons when imposing a consecutive sentence ... places [the courts] at risk of violating [the PSI confidentiality requirements,]" and (4) "the majority ... creat[es] a new 'rule' that is wholly unnecessary to the disposition of [Petitioner's case], and attempts to justify its grant of Petitioner's [A]pplication by conjuring up an issue surrounding HRPP Rule 35 under the guise of providing clarification." Dissenting opinion at 530–31, 229 P.3d at 348–49. For the following reasons, we respectfully disagree.

### A.

█ In arguing that "the majority's entire discussion of its new 'rule'" is "dicta," *id.*, the dissent states that dicta "is 'a judicial comment made ... *that is unnecessary to the decision in the case and therefore not precedential* (although it may be considered persuasive)[,]' " *id.* at 533, 229 P.3d at 351 (quoting *Black's Law Dictionary* 1102 (8th ed.2004) (emphasis in original)) (brackets

---

ner within the time provided herein for the reduction of sentence.

(b) Reduction of Sentence. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, *or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal*, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

(Emphasis added.)

25. Federal courts have held that the 120–day time limitation for filing a Fed.R.Crim.P. Rule 35(b) motion begins to run after the appellate judgment has been issued. *See United States v. Hill*, 826 F.2d 507, 507 (7th Cir.1987) (affirming "[Hill's] conviction" and holding that "Hill had until February 6, 1986," or 120 days from the date her conviction was affirmed on appeal, "to file a motion under Fed.R.Crim.P. 35(b) for a reduction of sentence"); *United States v. Dansker*, 581 F.2d 69, 74 (3d Cir.1978) (holding "that the 120–day period of Rule 35 begins to run from the date of receipt of the mandate affirming the judgment of conviction or dismissing the appeal or after appropriate Supreme Court action"); *United States v. Oshatz*, 822 F.Supp. 1077, 1078–79 (S.D.N.Y.1993) (noting that defendant's Rule 35 motion was filed and granted after appellate proceedings were exhausted).

omitted), and that " 'an inferior tribunal might not be bound under the doctrine of stare decisis *if the pronouncement of a superior court is actually dictum*[,]' " *id.* at 534, 229 P.3d at 352 (quoting *Robinson v. Ariyoshi,* 65 Haw. 641, 654, 658 P.2d 287, 298 (1982) (emphasis in original)). However, as also stated in *Black's, obiter dictum* is derived from the Latin for "something said in passing." *Black's Law Dictionary* 1177 (9th ed.2009). *Black's* also states:

> "Strictly speaking an obiter dictum is a remark made or *opinion expressed by a judge, in his decision upon a cause, 'by the way'—that is, incidentally or collaterally* and not directly upon the question before the court; or is any statement of law enunciated by the judge or court merely by way of illustration, argument, analogy, or suggestion[.]"

*Id.* (quoting *Brief Making and the Use of Law Books* 304 (3d ed.1914)) (emphasis added). As previously discussed, the requirement that sentencing courts state their reasons for imposing a consecutive sentence is germane to any HRPP Rule 35 motion Petitioner may file on remand, as well as to all future cases in which a court imposes a consecutive as opposed to a concurrent sentence under HRS § 706–668.5. Consequently, this holding is neither a statement collateral to the holding, nor merely a " 'remark made' " in passing. *Id.*

Furthermore, the dissent ignores that grave error or obvious inconsistencies are *not* curbs on the exercise of this court's

discretion to accept or reject an application, but are requirements of the certiorari application.[26] Thus, despite the absence of any reversible error in the ICA's opinion, when a majority of this court determines to accept certiorari and to issue an opinion, that opinion is not "dicta" merely because it affirms the decision of the ICA. Hence, as this court stated in *Ranches,*

> [t]he requirements in HRS § 602–59(b) are "directed only to the application for the writ. It is not descriptive of the scope of review determinative of th[is c]ourt's decision to grant or deny certiorari. Th[is c]ourt's power in that regard is intended to simply be discretionary."

115 Hawai'i at 464–65, 168 P.3d at 594–95 (quoting *Chong,* 86 Hawai'i at 283 n. 1, 949 P.2d at 123 n. 1) (emphases added). HRS § 602–59(a) makes manifest that the acceptance or rejection of certiorari is a matter within the discretion of this court. The statute's plain language confirms this, stating that "a party may seek review of the [ICA's] decision and judgment or dismissal order only by application ... for a writ of certiorari, *the acceptance or rejection of which shall be discretionary upon the supreme court.*" HRS § 602–59(a) (emphasis added).

Indeed, this court has posited additional grounds for accepting certiorari outside those expressly enumerated in HRS § 602–59(b). Certiorari has been accepted in numerous instances, in the absence of any error, in order to provide clarification.[27] We have also accepted certiorari to address matters of first

---

**26.** HRS § 602–59(b) (Supp.2008) states:
(b) *The application for writ of certiorari shall tersely state its grounds, which shall include:*
(1) Grave errors of law or of fact; *or*
(2) Obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision,
and the magnitude of those errors or inconsistencies dictating the need for further appeal. (Emphasis added.)

**27.** *See, e.g., Mikasa,* 111 Hawai'i at 1, 9, 135 P.3d at 1044, 1052 (affirming the ICA's approval of the circuit court's decision to impose consecutive sentences because "the court was presented with and set forth a multiplicity of circumstances that would support an exercise of discretion in favor of consecutive sentences[,]" but granting certiorari to clarify "that other factors would not sup-

port consecutive sentences if the court's remarks 'clearly indicate[d]' that an improper ground was an 'aggravating factor' in the sentencing decision"); *Nacino,* 101 Hawai'i at 467, 71 P.3d at 418; *Korsak,* 94 Hawai'i at 300, 12 P.3d at 1241; *State v. Kaufman,* 92 Hawai'i 322, 323, 991 P.2d 832, 833 (2000) (determining that "[a]lthough *the ICA reached the correct result, [this court] granted certiorari in this case to clarify* that a motion to set aside a DAG plea tolls the period of deferral pending the decision of the court on the motion[,]" and "[a]ccordingly, [ ] affirm[ed the petitioner's] judgment of conviction and sentence") (emphasis added); *Omori v. Jowa Hawaii Co.,* 91 Hawai'i 146, 146, 981 P.2d 703, 703 (1999) ("grant[ing] certiorari *for the sole purpose of clarifying what we believe may not be clear from the opinion of the [ICA ]*") (emphasis added).

impression. *See State v. Maluia*, 107 Hawai'i 20, 22, 108 P.3d 974, 976 (2005) (despite "hold[ing] that th[e] error was harmless beyond a reasonable doubt and therefore affirm[ing] the ICA's SDO[,]" "grant[ing the petitioner's] application for a writ of certiorari *for the sole purpose of addressing [an] issue of first impression in this jurisdiction* ") (emphasis added); *Korsak*, 94 Hawai'i at 305, 12 P.3d at 1246 (although disagreeing with the petitioner that "the ICA erroneously applied the statutory presumption of compensability[,]" and thereby affirming the ICA, "grant[ing] certiorari to explicitly examine the language of HRS § 386-85 to ascertain its proper scope[,]" because "Hawaii's appellate courts have never determined" the issue). The dissent does not suggest that the opinions issued in the foregoing cases were merely "dicta" because the decision of the ICA was affirmed.[28] Furthermore Petitioner has indicated that she believed a HRPP Rule 35 motion should have been filed. Inasmuch as we clarify that upon remand, Petitioner will have the opportunity to file a HRPP Rule 35 motion, our holding that the sentencing court would be required to state reasons is germane to Petitioner's probable Rule 35 motion and, thus, cannot be considered dicta.

Similarly, in this case, although the ICA did not err as to its ultimdissemate judgment, we accepted certiorari in our discretion, inasmuch as we (1) adopt the principle for future application, that the sentencing court must state on the record the reasons for imposing a consecutive sentence as necessary for the proper administration of justice, (2) clarify that a HRPP Rule 35 motion may be filed after the cessation of appellate proceedings in this case, in light of the ICA's

decision indicating otherwise, and (3) note that the requirement that reasons be given in imposing consecutive sentences at the sentencing hearing would be germane to a probable HRPP Rule 35 motion filed by Petitioner. *See Robinson*, 65 Haw. at 655, 658 P.2d at 298 (stating that this court's discussion of an issue is not dicta when it is "closely connected with the question upon which the case was decided, and the opinion [is] expressed with a view to settling a question that would in all probability have to be decided before the litigation was ended") (quotation marks omitted).

## B.

Similar to this case, in *Lau*, despite "[f]inding no reversible error," and "affirm[ing the] appellant's sentence[,]" this court set forth a new rule "mandat[ing] that the sentencing court make [the pre-sentence] report part of the record in all cases where a pre-sentence report has been prepared and that the report be sealed." *Lau*, 73 Haw. at 264, 831 P.2d at 526. This court recognized "that *traditionally the pre-sentence report is not* admitted into evidence or *made part of the record on appeal*[,]" and "that *such practice complies with HRS § 806-73*, which provides that all records of the adult probation divisions, including pre-sentence reports 'are confidential and are not public records.' " *Id.* (emphases added).

Nevertheless, "in order to maintain a complete record and *to facilitate appellate review of whether the sentencing court properly exercised its discretion*," *id.* (emphasis added), *Lau* implemented a new requirement that the pre-sentence report be included in the record on appeal, despite an established

28. For example, in *Kaufman*, this court affirmed the ICA, which had affirmed the circuit court. 92 Hawai'i at 323, 991 P.2d at 833. However, in that case, despite that fact that the petitioner's "sentence [wa]s affirmed, leaving nothing further to 'litigate[,]' " dissenting opinion at 534, 229 P.3d at 352, this court explicitly "h[e]ld that the tolling provisions under HRS § 706-627 apply to deferral periods pursuant to a [deferred acceptance of guilty] plea[,]" *Kaufman*, 92 Hawai'i at 330, 991 P.2d at 840. Similarly, in *Maluia*, this court "h[e]ld that the prosecution may not ask a defendant to comment on another witness's veracity[,]" 107 Hawai'i at 24, 108 P.3d at 978, and that such behavior constitutes "prosecutorial

misconduct[,]" *id.* at 25, 108 P.3d at 979, despite "affirm[ing] the ICA's ... [SDO] affirming the ... judgment of the circuit court[,]" *id.* at 27, 108 P.3d at 981. It would be wrong to suggest that what this court explicitly held in those cases is not controlling because there was "nothing further to litigate," and, indeed, the ICA and the holdings in those cases have been appropriately treated as precedential. *See, e.g., State v. Shannon*, 118 Hawai'i 15, 29, 185 P.3d 200, 214 (2008) (referring approvingly to the "holding" in *Kaufman* ); *State v. Kehdy*, No. 29146, 120 Hawai'i 418, 209 P.3d 195, 2009 WL 1805908, at *6 (Hawai'i App. June 25, 2009) (SDO) (citing the holding in *Maluia* approvingly).

practice to the contrary. Just as in *Lau*, giving reasons for a consecutive sentence facilitates "maint[enance of] a complete record and ... appellate review of whether the sentencing court properly exercised its discretion[.]" *See id.* As in *Lau*, we may impose measures related to improving the administration of justice where the facts of the case warrant. Just as the mandate set forth in *Lau* is manifestly *not* dicta, but a clear requirement binding on the courts, we confirm without qualification that the mandate set forth herein is not dicta, but binding precedent.

The dissent maintains that "the majority's reliance on *Lau* is unavailing inasmuch as the new 'rule' set forth in that case was directly related to the issue on appeal, *i.e.*, whether the sentencing court, in imposing a twenty[-]year term of imprisonment, considered an eight[-]year sentencing option under the young adult defendants statute for which he was qualified." Dissenting opinion at 543, 229 P.3d at 361 (citing *Lau*, 73 Haw. at 259–60, 831 P.2d at 523–24). The dissent fails to cogently explain how the requirement set forth in *Lau* that the PSI be placed in the record on appeal in future cases, was any more "related to the issue on appeal" than the rule set forth in this case.

Indeed, whether the PSI should be available to appellate courts *was not an issue presented by any of the parties* in *Lau*. Instead, this court's apparent difficulty in conducting meaningful review of the record led it to conclude that the PSI should be included *in the future*. In this case, although, as in *Lau*, our review of the record does not reveal any error on the part of the sentencing judge, this court will be better able to review arguments such as Petitioner's in the future if reasons for selecting a consecutive sentence are provided. Consequently, the rationale supporting the rules set forth in this case and in *Lau* are closely analogous. Also, the dissent's assertion that the "new rule ... [is] wholly unrelated to the issue being 'clarified,'" dissenting opinion at 543, 229 P.3d at 361, is incorrect inasmuch as the "new rule"

is related to the issues raised on appeal, including a HRPP Rule 35 motion, which "would in all probability have to be decided before the litigation was ended," *Robinson*, 65 Haw. at 655, 658 P.2d at 298.

## XI.

### A.

The dissent cites to the United States Supreme Court for the proposition that "justice *requires that directly controlling cases either be followed or candidly overruled.*" Dissenting opinion at 532, 229 P.3d at 350 (quoting *Solem v. Helm*, 463 U.S. 277, 312, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (Burger, C.J., dissenting, joined by White, Rehnquist, and O'Connor, JJ.) (other citation omitted)) (emphasis in original). However, the dissent's citation is inapposite inasmuch as this opinion does not overrule *Lau*, *Sinagoga*, or subsequent cases that cite to them.[29] *Lau* did not deal with consecutive sentencing, as the question in *Lau* was whether the court erred by not stating reasons for imposing the maximum "indeterminate term of twenty years" for a class A felony under HRS § 706–659, although appellant "could have received a special indeterminate term of eight years" under the young adult defendants statute. *Lau*, 73 Haw. at 260, 831 P.2d at 524. When this court stated that "there is no requirement for the sentencing court to state its reasons for imposing sentence[,]" *id.* at 263, 831 P.2d at 525, it was referring to the sentence imposed under HRS § 706–659, *not* HRS § 706–668.5. Thus, if *Lau* were decided again following this opinion, the result would be the same.

Similarly, *Sinagoga* is not called into question by this opinion inasmuch as the judge in that case *followed* the requirement set forth in this case. In *Sinagoga*, the ICA deemed relevant, *inter alia*, that "[u]nquestionably, [the sentencing judge] did state the reasons for the court's sentence." 81 Hawai'i at 429, 918 P.2d at 236 (emphasis added). The defendant conceded that "the court considered the factors stated in HRS § 706–606(2)(b)

---

29. *See also* dissenting opinion at 533, 229 P.3d at 351 (citing *Sinagoga*, 81 Hawai'i at 428, 918 P.2d at 235, *Vellina*, 106 Hawai'i at 449, 106 P.3d at 372, and *Tauiliili*, 96 Hawai'i at 199–200, 29 P.3d at 918–19, as precedent from which this opinion allegedly departs).

and (c)," and the ICA concluded that, "*[i]n light of the court's finding[s,] . . . the court undoubtedly considered*" the remaining factors. *Id.* at 428, 918 P.2d at 235 (emphasis added). Thus, *Sinagoga* would be decided the same way under the rationale set forth today.

This opinion does not impose a requirement, contrary to *Sinagoga*, that "a court . . . orally address every factor stated in HRS § 706–606" or "expressly recite its findings on the record for each of the factors set forth in HRS § 706–606[,]" *see id.*, as the dissent maintains. Dissenting opinion at 8. In any given case, a sentencing court's reasons for imposing multiple sentences consecutively, as opposed to concurrently, may or may not include reference to the HRS § 706–606 factors, as the circumstances warrant. The value of stating reasons on the record, which the dissent concedes has been urged upon sentencing courts for the last seventeen years, becomes imperative on the bases previously discussed.[30]

In asserting that the rule set forth in the majority opinion is contrary to the presumption in *Sinagoga*, the dissent cites to *Vellina* and *Tauiliili* as examples of cases that follow *Sinagoga*. Dissenting opinion at 6. However, those cases are not implicated inasmuch as neither one stated that the court need not state *reasons* for imposing a consecutive sentence, but only that "it is presumed that a sentencing court will have *considered all factors* before imposing concurrent or consecutive terms of imprisonment under HRS § 706–606 (1993)." *Vellina*, 106 Hawai'i at 449, 106 P.3d at 372 (quoting *Tauiliili*, 96 Hawai'i at 199–200, 29 P.3d 914, 918–19) (emphasis added). That today's holding does not call into question the decisions in those cases highlights the fact, then, that this case does *not* violate the doctrine of *stare decisis*. Accordingly, the rule we announce is consistent

with the statement of the ICA in *Sinagoga* that "[w]hile there is *no requirement that the court recite its findings on the record for each of the factors set forth in HRS § 706–606, the Hawai'i Supreme Court has recommended that a sentencing court state the reasons for its sentence.*" 81 Hawai'i at 428, 918 P.2d at 235 (emphasis added). In light of the considerations previously discussed, it is appropriate to now make this court's recommendation in *Sinagoga* concrete.

Because the dissent's characterization of this court's holding as a violation of the doctrine of *stare decisis* is not justified, there is no necessity to show "some compelling justification." Dissenting opinion at 532, 229 P.3d at 350 (quoting *State v. Garcia*, 96 Hawai'i 200, 206, 29 P.3d 919, 925 (2001)) (emphasis omitted). Furthermore, the dissent's reference to *Garcia* is incorrect, as this court's discussion was in the context of addressing the prosecution's argument that two prior decisions of this court, *State v. Wilson*, 92 Hawai'i 45, 987 P.2d 268 (1999), and *Gray v. Admin. Dir. of the Court*, 84 Hawai'i 138, 931 P.2d 580 (1997), "were *wrongly decided*," and should be "*overrul[ed]*." *Garcia*, 96 Hawai'i at 205, 29 P.3d at 924 (emphases added); *see Bynum v. Magno*, 106 Hawai'i 81, 92 n. 24, 101 P.3d 1149, 1160 n. 24 (2004) (citing, *inter alia*, *Garcia* and concluding that "the compelling justification standard as to overturning precedent is inapplicable" because "[t]hat standard has been applied *where specific precedent is overturned*") (citations omitted) (emphasis added). As discussed *supra*, in this case, we do not conclude that *Lau* or *Sinagoga* was wrongly decided. Thus, the dissent fails to show which specific precedent, much less *Lau* and *Sinagoga*, is overturned. *See id.* at 92, 101 P.3d at 1160. The numerous cases cited *supra*, wherein this court has affirmed, but accepted certio-

---

**30.** The dissent argues that because we do not require specific findings of fact, sentencing courts could satisfy the rule by "parrot[ing] or repeat[ing] the language of the factor itself[.]" Dissenting opinion at 540, 229 P.3d at 358 n. 9. This statement confuses the statutory factors with sentencing reasons. This court's decision in *Sinagoga* relied on that distinction, stating that "[w]hile there is *no requirement that the court recite its findings on the record for each of the*

*factors set forth in HRS § 706–606, the Hawai'i Supreme Court has recommended that a sentencing court state the reasons for its sentence.*" 81 Hawai'i at 428, 918 P.2d at 235 (emphasis added). Our holding today does not require sentencing courts to merely reiterate statutory factors any more than *Sinagoga* did. Although specific findings of fact are not required, this opinion does require that sentencing courts state the reasons for imposing consecutive sentences.

rari and issued an opinion to clarify or to address a matter of first impression, as well as this court's holding in *Lau*, belie the dissent's assertion that our holding "exploits the certiorari process" and "has no precedential value." [31] Dissenting opinion at 544, 229 P.3d at 362.

#### B.

The dissent asserts that it is unable to see how the mandate to give sentencing reasons on the record can "co-exist" with the presumption in *Sinagoga* that a sentencing court has reviewed all the statutory factors. *Id.* at 540, 229 P.3d at 358. The dissent asks, "[S]hould the reviewing court apply the presumption inasmuch as the presumption is still good law? Or, would a violation of the *Hussein* 'rule' require the reviewing court to ignore the presumption, vacate the sentence imposed, and remand the case for a new sentencing hearing?" *Id.*

Contrary to the dissent's assertion, not only can the rule and the presumption easily "co-exist," but the analysis in such cases is straightforward. In fact, *Sinagoga* provides an apt example of how the requirement that the court state *reasons* for its sentence, and the presumption that the court has considered the HRS § 706–606 *factors*, can co-exist. In *Sinagoga*, the ICA discussed at

some length "[t]he fact that a court does not orally address *every factor* stated in HRS § 706–606 at the time of sentencing *does not mean the court failed to consider those factors.*" 81 Hawai'i at 428, 918 P.2d at 235 (emphases added).

That court noted that "under HRS § 706–668.5, judges are duty-bound to consider HRS § 706–606 factors before imposing sentence[,]" but that, "absent clear evidence to the contrary, it is presumed that a sentencing court ... will have considered all the *factors*[.]" *Id.* (emphasis added).

*Sinagoga* proceeded to discuss, separate and apart from its discussion of whether all *factors* had been considered, the distinct question of whether the judge had stated *reasons* for his decision to impose the sentences consecutively, as opposed to concurrently, stating that "[w]hile there is *no requirement* that the court recite its findings on the record *for each of the factors* set forth in HRS § 706–606, the Hawai'i Supreme Court has recommended that a sentencing court *state the reasons for its sentence.*" *Id.* (emphases added). The ICA's discussion in *Sinagoga* shows that it manifestly (and correctly) believed that "stat[ing] reasons for the court's sentence[,]" and "acknowledg[ing] all factors] on the record" are distinct requirements. *Sinagoga* expressed a prefer-

---

**31.** Indeed, in the past we have similarly adopted prophylactic rules governing the conduct of criminal trials and sentencing. For example, in *Tachibana v. State*, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995), despite the absence of any existing rule dictated by precedent, "we h[e]ld that[,] in order to protect the right to testify under the Hawai'i Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify[.]" In that case, this court declined to apply the new rule to the case under review because

> while a primary purpose of placing the waiver on the record is to improve the accuracy of verdicts, *a silent record in a trial held before our decision today does not in and of itself raise serious doubts about the accuracy of the guilty verdict.* We believe it likely that retroactive application would be a significant burden on the administration of justice.

*Id.* at 238, 900 P.2d at 1305 (quotation marks, ellipses and brackets omitted) (emphasis added). Similarly, with respect to the requirement announced herein, a prior record that is silent as to

the court's reasoning for imposing a consecutive as opposed to a concurrent sentence does not clearly raise doubts about the fairness of the sentence opposed, or necessarily indicate that the judge did not engage in the considerations required by HRS § 706–606.5.

However, here, as in *Tachibana*, the rule set forth for future application is appropriate inasmuch as "the burden would be relatively minimal[,]" and by placing his or her reasoning on the record, "a trial judge would establish a record that would effectively settle" issues regarding the fairness of the sentence imposed, "and thereby relieve the trial judge of extended post-conviction proceedings[,]" *id.* at 235, 900 P.2d at 1302, while facilitating efficient appellate review, *id.* at 233, 900 P.2d at 1300. Thus, "the ... procedure would best serve all of the interests of all parties in the administration of justice." *Id.* at 235, 900 P.2d at 1302. Despite this court's affirmance of the circuit court in *Tachibana*, there can be no question that the colloquy rule set forth for future application was *not* "dictum," just as our affirmance here can leave no doubt that the requirement of giving reasons is mandated for the future.

ence that the sentencing court do *both*. However, that court did not need to address the propriety of setting forth reasons for the consecutive sentence in that particular case, because the judge had done so, and thus, there was no necessity to address that issue. *Sinagoga* then presents a prime example of a situation where the court stated *reasons* on the record, thereby satisfying the rule set forth herein, *but*, despite the fact that the judge did not explicitly address *each HRS § 706–606 factor*, "[b]ecause no clear evidence to the contrary exist[ed], [the ICA could not] say, under the circumstances, that the court failed to consider all the *factors* set forth in HRS § 706–606." *Id.* at 429, 918 P.2d at 230 (emphasis added). Hence, contrary to the dissent's assertion, it is entirely possible for the rule that reasons be given to "co-exist with the presumption" in *Sinagoga*, dissenting opinion at 542, 229 P.3d at 360, as it did in that very case.

The dissent's argument apparently stems from its confusion between the requirement in HRS § 706–668.5 that the court *consider* all of the HRS § 706–606 *factors* before imposing a consecutive *or* concurrent sentence, and the requirement expressed herein that the court state its *reasons* for imposing a consecutive sentence. As recognized in *Sinagoga*, and noted above, these are two separate matters. Whether or not the court satisfies the requirement that reasons be given, the presumption that *all HRS § 706–606 factors were considered* remains, absent clear evidence to the contrary.

However, merely because all of the factors were considered does not mean that the requirement of giving reasons was satisfied. A presumption that the court considered the HRS § 706–606 factors does not indicate what the judge's rationale was in arriving at the *conclusion* that a consecutive sentence should be entered. As noted before, an explanation of the court's rationale is intended to inform the defendant, the victim, and the public of the reasons why the sentence was entered, and to aid in appellate review.

Thus, to answer the dissent's questions as to how the presumption and rule can "co-exist" and what appellate courts should do where the "sentencing court fails to state its reasons," dissenting opinion at 26, the reviewing court should (1) apply the presumption that the court considered all of the HRS § 706–606 *factors*, (2) and hold that the sentencing court erred by not stating the reasons for the sentence imposed on the record, in violation of *Hussein.* Because the two requirements are separate, no "dilemma" or "confusion" results.

Moreover, it is neither "unfair" nor "insulting" to review the exercise of that discretion for abuse as the dissent maintains. *Id.* at 541, 229 P.3d at 359. As discussed *supra*, this court has reviewed the decisions of sentencing courts for abuse of discretion numerous times and such review is entirely appropriate. *See, e.g., State v. Ortiz*, 91 Hawai'i 181, 195, 981 P.2d 1127, 1141 (1999) (stating that "in order to engage in meaningful review of a sentencing court's decision without involving ourselves unduly in the exercise of the court's discretion, we require the sentencing court to '. . . enter into the record all findings of fact which are necessary to its decision' ") (brackets, internal quotation marks, and citations omitted); *State v. Okumura*, 78 Hawai'i 383, 413, 894 P.2d 80, 110 (1995) (remanding for re-sentencing because court did not state its reasons for imposing an extended term of sentence on the record); *State v. Tamura*, 63 Haw. 636, 638, 633 P.2d 1115, 1118 (1981) (concluding that because the court stated its reasons for imposing an extended term of sentence on the record, the standard set forth in *State v. Huelsman*, 60 Haw. 71, 588 P.2d 394 (1978), was satisfied). Therefore, the dissent's assertion that such review is "unfair" or "insulting" is unfounded.

## XII.

This is not the first time this court has mandated that sentencing courts state their reasons for imposing an enhanced sentence on the record. This court has held that reasons, in addition to findings of fact, must be placed on the record when extended terms of imprisonment were imposed. This court stated:

[In all] cases in which appeals may hereafter be taken from extended term sentences, the sentencing court shall state on

the record *its reasons for determining that commitment of the defendant for an extended term is necessary* for protection of the public *and* shall enter into the record all findings of fact which are necessary to its decision.

*Huelsman,* 60 Haw. at 91, 588 P.2d at 407 (emphases added). *Huelsman* involved the appellant's appeal of the court's imposition of an extended term sentence pursuant to HRS § 706–662.[32] *Id.* at 73, 588 P.2d at 397. This court had previously vacated the appellant's sentence in a prior disposition and remanded for resentencing. *Id.* At the resentencing hearing, the sentencing court did not state any "of the facts upon which [it] relied, and provided only a conclusory finding in each case[.]" *Id.* at 75, 588 P.2d at 398. The sentencing court merely stated that "the evidence shows beyond a reasonable doubt that the defendant is a multiple offender whose criminality is so extensive that a sentence of imprisonment for an extended term is warranted as required under Section [706–]662(4) of the Hawaii Penal Code." *Id.* (citations omitted)

This court concluded that the language of the then extended sentencing statute, HRS § 706–662(4), conferred upon sentencing judges unfettered discretion in how to sentence, thereby "fail[ing] to provide due process" guarantees against arbitrary sentences. *Id.* at 89, 588 P.2d at 405. Subsection (4) differed from the three other subsections contained in HRS § 706–662 that required a finding by the court that additional confinement of the defendant "is necessary for the protection of the public." HRS § 706–662 (1978). HRS § 706–662(4), on the other hand, required a finding that "[t]he defendant is a multiple offender whose criminality was so extensive that a sentence of imprisonment for an extended term is *warranted* [,]" without any reference to the protection of the public. HRS § 706–662(4) (emphasis added). This court concluded that the term "warrant-

ed" alone was unconstitutionally vague, thus violating the due process clause of the Hawai'i Constitution. *Huelsman,* 60 Haw. at 89, 588 P.2d at 405.

Rather than declare the statute unconstitutional, this court, "by judicial construction[,]" "remedied" the language of "HRS § 706–662 by substituting the unduly broad term 'warranted' [with] the more limited standard 'necessary for the protection of the public.'" *Id.* at 90, 588 P.2d at 406. Although not necessary to the disposition of the case, *Huelsman* concluded that "[t]he practice followed by sentencing courts of entering conclusory findings" in regard to sentencing under HRS § 706–662 "tend[ed] to force upon this court a choice between treating the sentencing decision as essentially non-reviewable or involving itself unduly in the exercise of sentencing discretion." *Id.* at 91, 588 P.2d at 407. As such, this court mandated that a sentencing court must *"state on the record its reasons"* for imposing an extended term of sentence and include in the record "the [PSI] and all evidence considered by the sentencing court" in making its decision. *Id.* (emphasis added).

*Huelsman* is analogous to this case. The rule announced in *Huelsman* cannot be considered mere dicta as it expressly sets forth a requirement to be followed by sentencing courts. Furthermore, the same concerns regarding this court's ability to review a court's decision to impose an extended term of imprisonment apply with equal weight to the imposition of consecutive sentences. Nevertheless, the dissent maintains that

> although the *Huelsman* court did set forth a new rule "mandat[ing] that sentencing courts state their reasons for imposing an [extended] sentence on the record," majority op. at 519, 229 P.3d at 337, such rule was … directly relevant to the disposition of the defendant's case.… [T]he court vacated the defendant's sentence and remanded the case for resentencing in conformity with its opinion.
>
> . . . .
>
> (4) Multiple offender. The defendant is a multiple offender whose criminality was *so extensive that a sentence of imprisonment for an extended term is warranted.* . . .
>
> *Huelsman,* 60 Haw. at 73 n. 2, 588 P.2d at 396 n. 2 (emphasis added).

**32.** HRS 706–662 (1978) stated in relevant part:
The court may sentence a person who has been convicted of a felony to an extended term of imprisonment if it finds one or more of the grounds specified in this section. The finding of the court shall be incorporated into the record.

Dissenting opinion at 537, 229 P.3d at 355 (citing 60 Haw. at 92, 588 P.2d at 407) (some brackets in original and some added) (emphasis omitted). However, as indicated before, the requirement regarding reasons will be directly applicable to Petitioner's probable HRPP Rule 35 motion in this case. Indeed, this court's decision in *Huelsman* and subsequent cases are precedent for the mandate that reasons be given.[33]

## XIII.

▇ The dissent's third argument is that directing that sentencing courts place reasons on the record would result in courts violating the PSI confidentiality provision of HRS § 806–73. *Id.* at 530–31, 229 P.3d at 348–49. The dissent concedes that such concerns have never been raised previously, and in fact this court has "strongly recommended," giving reasons since at least 1992. *Lau*, 73 Haw. at 263, 831 P.2d at 525. The dissent's objection is groundless because (1) the plain language of HRS § 806–73 (Supp. 2006) mandates that the PSI itself be kept confidential; (2) HRS § 806–73(b)(3)(A) expressly contemplates divulging information contained in the PSI under HRS § 706–604 (Supp.2006); (3) construing HRS § 806–73 *in pari materia* with HRS § 706–604(2), such information may be imparted in the limited context of the sentencing hearing and when

imposing sentence; and (4) our case law confirms the foregoing.

### A.

HRS § 806–73(b) provides in relevant part that

> *[a]ll adult probation records shall be confidential and shall not be deemed to be public records.* As used in this section, the term "records" includes, but is not limited to, *all records made by any adult probation officer in the course of performing the probation officer's official duties. The records, or the content of the records, shall be divulged only as follows:*
>
> . . . .
>
> (3) *A copy of a presentence report or investigative report shall be provided only to:*
>
> (A) *The persons or entities named in section 706–604;*
>
> (B) The Hawaii paroling authority;
>
> (C) Any psychiatrist, psychologist, or other treatment practitioner who is treating the defendant pursuant to a court order or parole order for that treatment;
>
> (D) The intake service centers;
>
> (E) In accordance with applicable law, persons or entities doing research; and

---

**33.** *See also State v. Melear,* 63 Haw. 488, 499, 630 P.2d 619, 628 (1981) (citing *Huelsman's* adoption of "a two-step process for the imposition of the extended term sentence"); *Tamura,* 63 Haw. at 638, 633 P.2d at 1117–18 (citing *Huelsman* for the proposition that "the sentencing court shall state on the record its reasons for determining that commitment of the defendant for an extended term is necessary for protection of the public and shall enter into the record all findings of fact which are necessary to its decision") (quotation marks omitted); *State v. Alexander,* 62 Haw. 112, 118, 612 P.2d 110, 114 (1980) (citing *Huelsman* for the proposition that a sentencing court "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come") (quotation marks omitted); *State v. Davis,* 60 Haw. 100, 102, 588 P.2d 409, 411 (1978) (following *Huelsman,* stating that a trial court's use of the PSI "constituted permissible use of hearsay under the [extended term sentence] statute"); *State v. Ortez,* 60 Haw. 107, 124, 588 P.2d 898, 909 (1978) (expanding the *Huelsman* PSI re-

quirement, stating that "in all other cases in which appeals may hereafter be taken from the review of sentences under Act 188, the reviewing court shall state on the record the reasons for its determinations and shall enter into the record all findings of fact which are necessary to its decision" and, furthermore, "[t]he record in each case shall include any [PSI]"); *State v. Sanchez,* 82 Hawai'i 517, 535, 923 P.2d 934, 952 (App. 1996) (citing *Huelsman* for the proposition that "the sentencing court shall state on the record its reasons for determining that commitment of the defendant for an extended term is necessary for the protection of the public and shall enter into the record all findings of fact which are necessary to its decision" and further stated that "[t]he record in each such case shall include the [PSI] and all evidence considered by the sentencing court") (quotation marks omitted); *State v. Schroeder,* 10 Haw.App. 535, 540–41, 880 P.2d 208, 210–11 (1992) (citing *Huelsman* to support the conclusion that "the material presented to the court [in the PSI] provided sufficient information for the court to make a reasoned judgment" as to sentencing) (citation omitted).

(F) Any Hawaii state adult probation officer or adult probation officer of another state or federal jurisdiction who:

(i) Is engaged in the supervision of a defendant or offender convicted and sentenced in the courts of Hawaii; or

(ii) *Is engaged in the preparation of a report for a court regarding a defendant or offender convicted and sentenced in the courts of Hawai'i;*

. . . .

(5) Notwithstanding subsection (b)(3), upon notice to the defendant, records and information relating to the defendant's risk assessment and need for treatment services or information related to the defendant's past treatment and assessments may be provided to:

(A) A case management, assessment or treatment service provider assigned by adult probation to service the defendant; provided that such information shall be given only upon the acceptance or admittance of the defendant into a treatment program;

(B) Correctional case manager, correctional unit manager, and parole officers involved with the defendant's treatment or supervision; and

(C) In accordance with applicable law, persons or entities doing research.

(6) *Any person, agency, or entity receiving records, or contents of records, pursuant to this subsection shall be subject to the same restrictions on disclosure of the records as Hawaii state adult probation offices.*

(7) Any person who uses the information covered by this subsection for purposes *inconsistent with the intent of this subsection or outside of the scope*

*of their official duties* shall be fined no more than $500.

(Emphases added.)

The terms "confidential" and "public record" are not defined in the statute. *Black's Law Dictionary* defines "confidential" as "meant to be kept secret," and "confidentiality" as "the state of having the *dissemination* of certain information *restricted.*" *Black's Law Dictionary* 318 (8th ed.2004) (emphases added). "Public" is defined as "*[o]pen or available for all to use,* share, or enjoy[,]" *id.* at 1264 (emphasis added), and "public record" is defined as "*[a] record* that a governmental unit is required by law to keep[,]" and is "generally *open to view by the public*[,]" *id.* at 1301 (emphases added).[34]

Under HRS § 806–73, then, the records themselves, including "[a] copy of a[PSI]," are manifestly subject to "restricted" dissemination, and are not to be made "available to all to use." *See State v. Sumera,* 97 Hawai'i 430, 433 n. 4, 39 P.3d 557, 560 n. 4 (2002) (indicating that the prosecution's inclusion of a copy of the PSI appended to its Answering Brief might be violative of HRS § 806–73, by noting that, despite no objection from the defendant, "[a]ffixing the [PSI] to an appellate brief, which is itself a public document, makes this confidential document part of the public record and available to the general public").

However, under HRS § 806–73(b)(3)(A), the PSI "shall be provided" to the "persons or entities named in [HRS § ]706–604." HRS § 706–604(2) states that

[t]he court *shall furnish to the defendant or the defendant's counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis* or psychological, psychiatric, or other medical examination *and afford fair opportunity,* if the defendant or the prosecuting attorney so requests, *to controvert or supplement them. The court shall amend or order the amendment of the report upon finding that any correction, modification, or addi-*

---

**34.** The dissent does not attempt to define the terms "confidential" or "public record" but merely assumes that the term "confidential" must preclude any reference to such information at the sentencing hearing. The dissent's extremely broad reading of the term "confidential" would seem to preclude the necessity of the admonition in the statute that probation records "shall not be deemed to be public records," thus rendering that phrase a nullity.

tion is needed and, where appropriate, shall require the prompt preparation of an amended report in which material required to be deleted is completely removed or other amendments, including additions, are made.

(Emphases added.) Thus, in connection with HRS § 806–73(b)(3)(A), HRS § 706–604(2) mandates that "[t]he court shall furnish to the defendant or the defendant's counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis[.]" Manifestly, HRS § 706–604(2) also indicates that the court has access to a copy of the PSI inasmuch as the court is required to "furnish" a copy to the parties, and also to "amend" the report when necessary. *See id.; see also* HRS § 706–601(1) (Supp.2006) (requiring that "the court shall order a pre-sentence correctional diagnosis of the defendant and accord due consideration to a written report of the diagnosis before imposing sentence"); HRS § 706–602(1) (1993 & Supp. 2006) (mandating that "[t]he pre-sentence diagnosis and report shall be made by personnel assigned to the court").

### B.

All penal sentences must be imposed in accordance with HRS chapter 706. HRS § 706–600 (1993). HRS § 706–602(1) provides that, in the sentencing procedure, the PSI is prepared "by personnel assigned to the court, intake service center or other agency designated by the court[.]" The PSI must contain the following information:

(a) An analysis of the *circumstances attending the commission of the crime;*

(b) The defendant's *history of delinquency or criminality,* physical and mental condition, family situation and background, economic status and capacity to make restitution or to make reparation to the victim or victims of the defendant's crimes for loss or damage caused thereby, *education, occupation,* and personal habits;

(c) *Information made available by the victim or other source concerning the effect that the crime committed by the defendant has had upon said victim, including but not limited to, any phys-*

ical or psychological harm or financial loss suffered;

(d) Information concerning defendant's compliance or non-compliance with any order issued under section 806–11; and

(e) *Any other matters that the reporting person or agency deems relevant or the court directs to be included.*

HRS § 706–602(1) (emphases added). Hence, a wide variety of information is contained in the report, much of which may be public by nature. For instance, the circumstances of the crime, the defendant's criminal record, education, and employment history are types of information that would generally be available to the public or through alternative means. The victim impact statement is often made a part of the PSI and the victim or the victim's family is given the opportunity to be heard in open court at the hearing itself. HRS § 706–604(3) (1993).

As noted, in the sentencing process, HRS § 706–604(2) "afford[s] fair opportunity, if the defendant or the prosecuting attorney so requests, to controvert or supplement [the PSI]." HRS § 706–604(2) thus guarantees both the defendant and the prosecution access to the PSI and an opportunity to challenge or to add to the information therein. *See also State v. Paaaina,* 67 Haw. 408, 410, 689 P.2d 754, 757 (1984) (holding that, although defendant is not entitled access to the probation officer's recommendation itself, he or she *must* be provided notice of any factual information therein which is not already contained in the PSI, because "HRS §§ 706–602 and 706–604 clearly contemplate that a defendant *will have access to all factual information used in sentencing*" (emphasis in original)); Hawai'i Revised Code of Judicial Conduct Rule 2.9(a)(3) (providing that "[a] judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, *provided that any factual information received by the judge that is not part of the record is timely disclosed to the parties*") (emphasis added). Additionally, the court is required to "amend or order the amendment of the report upon finding that any correction, modification, or addition is needed and, where appropriate, shall require

the prompt preparation of an amended report in which material required to be deleted is completely removed or other amendments, including additions, are made." HRS § 706–604(2).

■ The Commentary on HRS § 706–604(2) emphasizes that the entire report must be provided to the defendant and any "information the *source* of which is regarded as *confidential*" cannot be "*insert[ed]*" in the PSI:

> The right to controvert is meaningless unless the report itself, rather than the factual contents and conclusions, is made available to the defendant. Even more ludicrous would be the insertion into the report of information the source of which is regarded as confidential. The defendant, under such circumstances could not be expected to controvert such information by showing, for example, that the source was unreliable or biased.

(Emphasis added.) Thus, HRS § 706–604(2) precludes "the insertion of . . . information" obtained from "confidential" sources as "ludicrous" inasmuch as the defendant has "the right to confront" and such a right would be "meaningless" were the sources not disclosed. *See State v. Nobriga*, 56 Haw. 75, 78, 527 P.2d 1269, 1271 (1974) (concluding that "history of delinquency" in HRS § 706–602(1) authorizes the use of a defendant's juvenile record in the PSI, and such use does not violate the confidentiality provisions in HRS chapter 571 governing the family courts). By definition, then, the PSI is not a depository for information that cannot be discussed in a sentencing hearing. *See State v. Lessary*, 83 Hawai'i 280, 285, 925 P.2d 1104, 1109 (App.1996) (holding that "[the d]efendant's right to a 'fair opportunity' to 'controvert or supplement' the pre-sentence report" includes the right to call the probation officer to testify at the sentencing hearing regarding the officer's reasons for addressing certain factors in the report). Moreover, because the statute directs the court to "amend or order the amendment of the report upon finding that any correction, modification, or addition is needed," HRS § 706–

604(2), the court may address the contents of the PSI on the record.

### C.

■ Because they both concern PSIs, HRS §§ 806–73 and 706–604 must be construed *in pari materia*. *See Barnett*, 91 Hawai'i at 31, 979 P.2d at 1057, *supra* at 503, 229 P.3d at 321; *see also Kamana'o*, 118 Hawai'i at 218, 188 P.3d at 732 ("[S]tatutes [that] relate to sentencing . . . should be construed *in pari materia*."). But, "where there is a plainly irreconcilable conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored." *Richardson v. City & County of Honolulu*, 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (1994) (quotation marks and citation omitted).

Manifestly, HRS § 806–73 contemplates HRS § 706–604(2) as encompassing a limited qualification of the PSI's confidentiality, inasmuch as HRS § 806–73(b)(3)(A) states that "[a] copy of a presentence report or investigative report shall be provided [ ] to [t]he persons or entities named in section 706–604[.]" Construing the two statutes together indicates that HRS § 706–604(2) is an exception to HRS § 806–73 for purposes of divulging information in the PSI, inasmuch as, as discussed *supra*, HRS § 706–604(2) allows (1) controversion and supplementation of the PSI by the parties, (2) amendment by the court, and (3) examination of the probation officer who prepared the report. *See Lessary*, 83 Hawai'i at 285, 925 P.2d at 1109. The Commentary on HRS § 706–604(2) further indicates that the source of information in the report may not be confidential, and that the sentencing phase is as important as the determination of guilt. Thus, HRS § 806–73 incorporates the PSI uses permitted by HRS § 706–604(2) in sentencing proceedings. Inasmuch as HRS § 806–73 apparently contemplates the uses of the PSI as embodied in HRS § 706–604(2), the two statutes must be read together.[35]

---

**35.** While HRS § 806–73 deals broadly with the

"duties and powers of probation officers" and

### D.

Additionally, our courts have sanctioned the use of information contained in the PSI in open court in determining the proper sentence to be imposed, and this court has never held that such procedure violates HRS § 806–73 in nearly twenty-five years. For instance, in *State v. Heggland,* 118 Hawai‘i 425, 441, 193 P.3d 341, 357 (2008), one of the issues on appeal was whether there was sufficient competent evidence at sentencing of the date of Heggland's sentencing for a prior conviction in Colorado. This court noted that the evidence consisted of "(1) [a] document entitled Integrated Colorado Online Network (ICON)," "(2) the testimony of [the] parole officer[,]" and "(3) *the presentence diagnosis and report* [.]" *Id.* at 442, 193 P.3d at 358 (emphasis added). This court set forth in detail the information regarding the Colorado conviction that was contained in the PSI. *See id.* at 443, 193 P.3d at 359. Significantly, this court noted that "*[r]eferences to the [PSI] were made at the ... sentencing hearing by the court and counsel,* but Heggland did not raise any challenge to the sentence date [for the prior conviction] contained in the [PSI]." *Id.* (emphasis added). This court further noted that Heggland had put other corrections "*on the record*" both at the sentencing hearing and in prior appearances. *Id.* at 443 n. 17, 193 P.3d at 359 n. 17 (emphasis added).

As to the propriety of employing the information contained in the PSI for sentencing,

this court recently emphasized that "[t]he trial court is statutorily required to 'accord due consideration'" to the PSI, and held that the court "abused its discretion in failing to accord the evidence its proper weight." *Id.* at 446, 193 P.3d at 362 (quoting HRS § 706–601 (Supp.2003)). Based on the foregoing, in *Heggland,* the contents of the PSI were a subject of discussion at the sentencing hearing and in this court's opinion on appeal. Indeed, this court held that the sentencing court should have relied on information in the PSI as competent evidence. *No member of this court objected to the use of the PSI based on HRS § 806–73.* *Heggland* illustrates the importance of the information contained in the PSI in conducting and/or reviewing a sentencing hearing and, thus, that the dissent's position is erroneous.[36]

*State v. Chavira,* No. 29082, 120 Hawai‘i 255, 203 P.3d 675, 2009 WL 458772 (Haw. App. Feb. 25, 2009) (SDO), further demonstrates the use of information in the PSI both at the sentencing hearing and on appeal. In that case, the ICA, in the context of reviewing Chavira's challenge to the circuit court's sentencing decision, reviewed on the record the pertinent information contained in the PSI. *Id.* at *1. In that connection the ICA stated that

Chavira's Sentencing Statement, which was made part of the [PSI] upon his request, brought up the issue of Chavira's *early involvement with gangs, alcohol, and drugs while he was growing up in Califor-

---

the confidentiality of "adult probation records," HRS § 706–604(2) deals more specifically with a particular exception to the confidentiality of the PSI, which is a specific type of probation record. Thus, assuming *arguendo,* in the case of any conflict, HRS § 706–604, which is the more specific statute, would control.

**36.** The dissent argues *Heggland* "is inapposite because ... convictions although contained in a PSI report, can be ascertained from the public records[.]" Dissenting opinion at 542, 229 P.3d at 360 n. 12. However, the majority in *Heggland* opined that "the combined evidence" including the PSI was pivotal and should have been considered by the sentencing court. 118 Hawai‘i at 446, 193 P.3d at 362. This court quoted the PSI not merely to ascertain the subject prior conviction date of the defendant, but included the defendant's personal characterizations of his various convictions.

[Heggland] said he was sentenced in 1997 for the Arizona case first. (It is not known if he was sentenced as an adult.) He was then extradited to Colorado and arrested on November 5, 1997. On November 14, 1997, he was sentenced to five years [sic] prison for Conspiracy to Commit Aggravated Robbery (Count III), concurrent with his Arizona sentence, with credit for 323 days time served. The remaining Counts were dismissed. *He noted that he got a stiffer sentence than his codefendants as he was the one who possessed the handgun.* After sentencing in Colorado, *he said he was returned to Arizona to serve his prison term. Due to misconducts [sic], he ended up serving a longer sentence, four years nine months.*

*Id.* at 443, 193 P.3d at 359 (brackets in original) (emphasis omitted and emphases added).

nia and explained the factors that had caused that involvement, including his parents' own involvement in a gang. The circuit court acknowledged the "challenging circumstances" that Chavira faced as a youth, suggesting that it viewed those circumstances as a mitigating factor. At no point did the circuit court indicate that it was imposing a harsher sentence on Chavira because of his past associations or because of where he was originally from.

*Id.* (emphasis added). The ICA concluded that the circuit court had properly considered the information in the PSI in arriving at its sentencing decision, holding that

the circuit court's consideration of Chavira's history of substance abuse was appropriate, particularly in view of the role that Chavira's drug use and intoxication played in the instant offense. Finally, *the circuit court appropriately placed significant emphasis on the circumstances of the offense*, noting that it "involved unprovoked conduct, was extremely serious in nature, [and] involved the potential loss of life."

Accordingly, *the circuit court did not abuse its discretion in sentencing Chavira to consecutive terms of imprisonment.*

*Id.* at *2 (emphases added).

When a defendant pleads no contest, as Chavira did, or guilty, there is no source of information available to the sentencing court for purposes of rendering a reasoned and personalized sentencing decision, aside from that provided in the PSI. *See* Commentary on HRS § 706–601 ("The vast majority of cases are disposed of upon pleas of guilty. It is obvious that in such cases the court has no information upon which to select between and among various sentencing alternatives."). *Chavira* illustrates the necessity of allowing the sentencing court to refer to information in the PSI in order (1) to set forth the court's rationale for the sentence chosen, and (2) to provide for meaningful appellate review. Because there was evidence in the *Chavira* record that the sentencing judge conscien-

tiously considered the defendant's personal and family history, and the circumstances of the offense, both the prosecution and the defendant had the opportunity to articulate a position on the consecutive sentence, and the ICA was able to come to the informed decision that the court did not abuse its discretion.

The dissent's view would preclude such a reasoned approach. Contrary to *Heggland* and *Chavira*, the dissent maintains that the judge should be precluded from relying upon information in the PSI "such as the defendant's 'history of delinquency,' 'mental condition,' 'family situation,' 'personal habits,' or other such information not available from public records[.]" Dissenting opinion at 541, 229 P.3d at 359. However, *Chavira* manifestly indicates that reliance on such information in the context of *sentencing* is appropriate.[37] *See also Nobriga*, 56 Haw. at 77, 527 P.2d at 1271 (stating that HRS § 706–602 "was *geared to assist the trial judge at the sentencing stage*") (emphasis added). Moreover, under HRS § 706–604(2), the defendant or prosecution is authorized to controvert any of the foregoing information on the record. However, in the dissent's view, no court, no prosecutor, and no defense attorney could reference any information in the PSI regardless of the type of sentencing proceeding. Such a rule would unequivocally hamstring prosecutors and deputy attorney generals from arguing details of prior offenses or police reports (which are not public records despite the dissent's statement to the contrary), or the impact on a victim. The dissent's interpretation of the law would constrain the government significantly in its effort to protect the safety of the community. Thus, to imply or to assert that such information cannot be referred to during sentencing is simply wrong.

The "new 'rule'," then, does not place judges "in an untenable situation" that "they [either] comply with the new 'rule' by

---

**37.** The dissent charges that the sentencing court (and apparently the ICA,) "unwittingly ... violate[d] ... the confidentiality of ... PSI reports," dissenting opinion at 542, 229 P.3d at 360 n. 12, without any support and apparently on pure speculation. Moreover, as opposed to the dis-

sent's view, the ICA noted that reference to the defendant's personal and family history "suggest[ed] that [the sentencing court] viewed those circumstances as a mitigating factor." *Chavira*, 2009 WL 458772, at *1.

reciting their specific reasoning ... and, thus, risk violating the confidentiality of the [PSI]; or ... ignore the majority's new mandate and not recite specifics, thereby preserving confidentiality[,]" dissenting opinion at 541, 229 P.3d at 359, as the dissent would have it. Sentencing judges will not "risk violating the confidentiality of the [PSI]," *id.,* because it is entirely appropriate, *indeed required,* that judges utilize information from the PSI in determining the appropriate sentence, and such use of the PSI by the court in the context of sentencing is expressly allowed by the statutes.[38] *See* HRS § 706–601 (requiring that the court "accord due consideration to a written report of the diagnosis before imposing sentence"); HRS § 706–604(2) (mandating that "[t]he court shall amend or order the amendment of the report upon finding that any correction, modification, or addition is needed"); HRS § 806–73(b)(3)(A) (mandating that "[a] copy of a [PSI] shall be provided" to "[t]he persons or entities named in section 706–604"); *see also Nobriga,* 56 Haw. at 75, 81, 527 P.2d at 1270, 1273 (holding that "a trial judge at the sentencing stage may consider a [PSI] which includes an adult-defendant's juvenile court record").

## E.

The foregoing cases demonstrate that the PSI is the pertinent source of information in the sentencing process as contemplated in HRS §§ 706–601, –602, and –604. *See* HRS § 706–601 (dictating that *in felony cases and for youthful offenders,* "the court *shall order* a pre-sentence correctional diagnosis of the defendant *and accord due consideration to a written report* of the diagnosis before imposing sentence") (emphases added); *see also Nobriga,* 56 Haw. at 77, 527 P.2d at 1270 (holding that, in the context of a sentencing hearing, HRS § 706–602 governs over provisions in the Family Court Act that "afford certain protections to juveniles involved in adversary proceedings"). As indicated

above, in change-of-plea cases, such as in *Heggland* and *Chavira,* the PSI will often be the sole source of relevant information to inform the court's sentencing decision. The Commentary on HRS § 706–601 explains that "[t]he vast majority of cases are disposed of upon pleas of guilty[,]" and "in such cases the court has no information upon which to select between and among various sentencing alternatives." The Commentary further emphasizes that "[i]n any system which vests discretion in the sentencing authority, it is necessary that the authority have sufficient and accurate information so that it may rationally exercise its discretion." *Id.*

Thus, "it is extremely unlikely that without a special provision providing for a[PSI] that the relevant information will be brought to the attention of the court." *Id.; see also Nobriga,* 56 Haw. at 81, 527 P.2d at 1273. Even "where the case is tried before the sentencing judge, the evidence at trial is not likely to produce information relevant to sentencing a subsequently convicted defendant[,]" inasmuch as such information is "not likely to be fully explored in an adversary proceeding designed to decide the issue of guilt." Commentary on 706–601. We believe that in order to "rationally exercise its discretion," *id.,* the court is not only permitted to, but required to, employ the PSI in the sentencing hearing. Indeed, HRS § 706–604(2) explicitly allows the parties and the court to reference the PSI, *see Lessary,* 83 Hawai'i at 285, 925 P.2d at 1109, *Heggland,* 118 Hawai'i at 443, 193 P.3d at 359, *Chavira,* 2009 WL 458772 at *1, and to be heard at the sentencing hearing regarding the contents of the PSI, and HRS § 806–73 does not prohibit, but permits, the use of information contained in the PSI at sentencing. The dissent's position in this regard, thus, is entirely unsupportable.

---

38. The dissent cites to *State v. Pantoja,* 89 Hawai'i 492, 974 P.2d 1082 (1999), *State v. March,* 94 Hawai'i 250, 11 P.3d 1094 (2000), *State v. Akana,* 10 Haw.App. 381, 876 P.2d 1331 (1994), and *Solem,* 463 U.S. at 290, 103 S.Ct. 3001, dissenting opinion at 538, 229 P.3d at 356, for the general proposition that sentencing courts

have substantial discretion to impose sentences on defendants. Our holding does not in any way conflict with this proposition. The requirement that sentencing courts state their reasons does not interfere with their discretion, but only ensures that the discretion has not been abused.

## F.

### 1.

The dissent points out that when the confidentiality provision was being considered in 1985, the Conference Committee on the bill stated that

> [r]ecords originated by adult probation officers pursuant to duties and powers already established in [HRS § 806–73] are not clearly and expressly confidential. *This fact sometimes hampers adult probation officers in the performance of their duties.* This bill makes explicit the documents which can be released and to whom they can be released.

Dissenting opinion at 539, 229 P.3d at 357 (quoting Conf. Comm. Rep. No. 14, in 1985 Senate Journal, at 852; Conf. Comm. Rep. No. 24, in 1985 House Journal, at 894) (emphasis added) (bracketed material omitted). But, by making the records confidential, the legislature was apparently attempting to facilitate probation officers in the performance of their duties. Plainly, the sentencing courts' reliance upon information contained in the PSI at the sentencing hearing does not in any way "hamper[ ]" the duties of probation officers.

The dissent further cites to the legislative history of the 2006 amendment to HRS § 806–73 for the proposition that the PSI is to be kept confidential in large part to protect "a defendant's privacy." Dissenting opinion at 539, 229 P.3d at 357 (quoting S. Stand. Comm. Rep. No. 2250, in 2006 Senate Journal, at 1134). The Committee on Judiciary and Hawaiian Affairs had expressed "concerns 'regarding a defendant's privacy and the ability of case management, assessment, or treatment providers to use information in a defendant's adult probation records to selectively grant certain defendants access to a treatment program.'" *Id.* (quoting S. Stand. Comm. Rep. No. 2250, in 2006 Senate Journal, at 1134). However, in 2006, the legislature in fact "add[ed] persons and entities to the list of those who are allowed access to adult probation records[,]" to "[a]llow state or federal court programs access to a copy of any adult probation record," thus increasing the dissemination of such informa-

tion. Sen. Stand. Comm. Rep. No. 2250, in 2006 Senate Journal, at 1134.

Relying on those reports, the dissent asserts that "sentencing judges, in conscientiously attempting to comply with the majority's new 'rule,' may unwittingly violate the legislative intent and statutory mandate." Dissenting opinion at 540, 229 P.3d at 358. However, in the context of the 2006 amendments, the legislature recognized that "balanc[ing] privacy and other issues" weighed in favor of expanding the list of those allowed access to adult probation records. *See* Sen. Stand. Comm. Rep. No. 2250, in 2006 Senate Journal, at 1134. Indeed, 2006 was the same year that HRS § 706–604(2) was amended to require the court "upon finding that any correction, modification, or addition is needed," to amend the PSI. Similarly, the legislature had previously determined, when it imposed the confidentiality requirement in 1985, that the balance weighed in favor of an exception for use of the PSI at sentencing hearings under HRS § 706–604. Thus, the dissent's concerns about violating the legislative intent are truly unfounded.

### 2.

The dissent also cites to the commentary to the *ABA Standards for Criminal Justice* that relate to the confidentiality of PSI reports, arguing that this opinion undermines a defendant's right to privacy. Dissenting opinion at 539, 229 P.3d at 357. However, as noted *supra,* the same ABA standards cited by the dissent explicitly state that a "sentencing court's statement of reasons for the sentence imposed is, *of course,* essential to meaningful appellate review of sentences." *ABA Standards for Sentencing* at 212–13, Commentary to Standard 18–5.19 (footnotes and citations omitted) (emphasis added). It is difficult to discern how the ABA Standards support the dissent's position that information in the PSI should not be alluded to on the record inasmuch as the ABA Standards state:

> (a) The rules of procedure should provide that counsel for both parties, *the offender, and the victim have the opportunity to present submissions material to the sentence to the sentencing court.*

(i) Both parties should be permitted to present evidence and information, to confront and cross-examine witnesses for the other side, and to offer rebuttal evidence and information to that adduced by the other side, *contained in the presentence report,* or otherwise presented to the sentencing court.

. . . .

*ABA Standards for Sentencing* at 203–04, Standard 18–5.17 (emphases added). The ABA Standards further explain that "[t]he rules should provide that the sentencing court make express findings on all disputed issues of fact material to the determination of the sentence imposed." *Id.* at 209, Standard 18–5.18(b). Manifestly, the ABA Standards contemplate not only the discussion of facts contained in the PSI on the record, but also the presentation of evidence on those facts. It encourages courts to address disputed facts as well as make findings regarding material in the PSI. This contradicts the dissent's position with regard to the privacy concerns surrounding the PSI reports and demonstrates that the contents of the PSI are subject to inquiry at sentencing hearings.

██ As noted previously, the dissent's concerns have already been weighed by the legislature in its decision to "add persons and entities to the list of those who are allowed access to adult probation records[.]" Sen. Stand. Comm. Rep. No. 2250, in 2006 Senate Journal, at 1134. Moreover, the legislature's decision to increase the availability of PSI reports came long after this court had addressed the importance of stating sentencing reasons on the record in *Lau, Sinagoga, Lessary,* and related cases. The legislature has not responded to this court's admonition to sentencing courts to give reasons for their sentences by altering the language in either HRS § 806–73 or HRS § 706–604. " 'Where the legislature fails to act in response to our statutory interpretation, the consequence is that the statutory interpretation of the court must be considered to have the tacit approval of the legislature and the effect of legislation.' " *Gray v. Admin. Dir.,* 84 Hawai'i at 143 n. 9, 931 P.2d at 585 n. 9 (quoting *State v. Dannenberg,* 74 Haw. 75, 83, 837 P.2d 776, 780 (1992)) (brackets omitted). *See also Go-*

*rospe v. Matsui,* 72 Haw. 377, 819 P.2d 80 (1991) (stating that "[t]he legislature has had several years in which to reflect on our holding [ ] and to correct our construction of the statutes if it deems us to be in error") (citing *Honolulu Star Bulletin v. Burns,* 50 Haw. 603, 607, 446 P.2d 171, 173 (1968)). Thus, the dissent's views in this regard are unsupported.

G.

The dissent's position on the confidentiality of PSIs would completely abrogate the language and purpose of HRS § 706–604 and ignore the qualification on confidentiality in HRS § 806–73(b)(3)(A). The importance of the availability for and use by the prosecution, the defendant, and the court, of the PSI's contents in sentencing proceedings is highlighted by the Commentary's admonition equating the importance of the determination of guilt with the sentencing stage, declaring that "[t]he question of whether the defendant should be sentenced to imprisonment or to probation *is no less significant* than the question of guilt[.]" Commentary on HRS § 706–604(2) (emphasis added). As noted above, the dissent's concerns about risks in violating the confidentiality requirements of the statutes rings hollow in light the fact that this court has, for nearly two decades, "urged and strongly recommended" that sentencing courts state their reasons for imposing a particular sentence. *Lau,* 73 Haw. at 263, 831 P.2d at 525. The dissent's attempt to distance this court from its own forceful language is unconvincing. Ultimately the fallacy in the dissent's position is that HRS §§ 806–73 and 706–604 expressly contemplate that both the defense and the prosecution may controvert or supplement the PSI, and that the court may order amendment of the report. Plainly, then, the statutes presume that a defendant's personal information may be disclosed on the record and in open court at sentencing hearings to the extent the parties and the court find it necessary to refer to it. What HRS §§ 806–73(b) and 706–605 prohibit is not such use of the report, but *public* disclosure and access to the PSI itself. We thus respectfully reject the dissent's position.

## XIV.

Finally, the dissent argues that the majority unnecessarily addresses Petitioner's HRPP Rule 35 motion inasmuch as the ICA's opinion cannot "reasonably be interpreted as suggesting" Petitioner had lost the opportunity to appeal. Dissenting opinion at 31. To the contrary, as discussed *supra*, the ICA's opinion addressed the HRPP Rule 35 issue as though it was a closed matter, never indicating that the opportunity still existed, and obviously left Petitioner with the impression that the time to file a HRPP Rule 35 motion had passed. A key element of Petitioner's ineffective assistance claim is that she believed counsel was ineffective not by virtue of his "mere failure" to file a HRPP Rule 35 motion generally, but in particular because he failed to do so "prior to the notice of appeal" and thus, in her view, forfeited that claim. It is difficult to discern how Petitioner's statements that "due diligence required such a motion[,]" "prior to the notice of appeal[,]" in order to "retain[ ] the lower [c]ourt's jurisdiction[,]" can mean anything other than that she believed that counsel's failure to file a HRPP Rule 35 motion *prior to appeal* foreclosed any future opportunities.[39] Furthermore, because Petitioner's "any sentence" argument is both novel and correct, it is important to point out, in light of the ICA's decision on ineffective assistance of counsel, that such an argument may still be raised in a HRPP Rule 35 motion, a proposition that was not expressed by the ICA. Thus, the dissent's assertion is incorrect.

## XV.

Based on the foregoing, the ICA's decision is affirmed consistent with this opinion, and the court's judgment is affirmed.

Opinion by MOON, C.J., Concurring in Part, and Dissenting, in Part, in which NAKAYAMA, J., Joins.

I concur in the majority's affirmance of Petitioner's consecutive sentence based upon the application of the presumption that the sentencing court considered all of the factors set forth in Hawai'i Revised Statutes (HRS) § 706–606 before imposing a consecutive sentence, originally promulgated in *State v. Sinagoga*,[1] 81 Hawai'i 421, 918 P.2d 228 (App. 1996), *overruled on other grounds by State v. Veikoso*, 102 Hawai'i 219, 227, 74 P.3d 575, 583 (2003). I cannot, however, agree with the inclusion of the majority's new "rule," mandating that, "henceforth, the sentencing court *must* state its reasons for imposing a consecutive sentence on the record," majority op. at 498, 229 P.3d at 316 (emphasis added), for several reasons. First, mandating the sentencing court to state specific reasons when imposing a consecutive sentence—without overruling the long-standing presumption set forth in *Sinagoga* violates the doctrine of *stare decisis*. Second, the majority concludes, based on its application of the *Sinagoga* presumption, that the ICA correctly affirmed the sentencing court's imposition of a consecutive sentence in this case. *See* Majority op. at 504, 229 P.3d at 322. As such, the majority's entire discussion of its new "rule" is wholly unnecessary to dispose of this case and, thus, constitutes *obiter dicta,* or more commonly referred to as dicta. Third, mandating the sentencing court to state specific reasons when imposing a consecutive sentence, without overruling *Sinagoga,* creates confusion in our jurisprudence. As importantly, the conflicting case law creates an untenable situation for our sentencing judges because it places them at risk of violating Hawai'i Revised Statutes (HRS) § 806–73 (Supp.2008), quoted *infra,* which

---

**39.** Additionally, Petitioner's entire discussion of the HRPP Rule 35 issue in her Opening Brief reveals that an essential part of her ineffective assistance claim was that she had been "highly prejudic[ed]" by counsel's failure to file a HRPP Rule 35 motion because it was not *"filed in advance of the notice of appeal."* (Emphasis added.) Because Petitioner's belief that counsel forfeited her opportunity to file a HRPP Rule 35 motion by not filing before the notice of appeal was central to her ineffective assistance argu-

ment, it was incumbent upon the ICA in addressing that argument to point out that counsel had *not* in fact forfeited such motion, inasmuch as it could still be filed following appellate proceedings.

**1.** I observe that then-Intermediate Court of Appeals (ICA)-Judge Acoba authored the opinion for the court.

dictates that the information contained in pre-sentence investigation (PSI) reports be kept confidential. And, finally, inasmuch as the majority agrees with "the result reached by the ICA ... that all mitigating factors that were known at the time of sentencing were presented to the sentencing court, and, therefore, counsel's decision not to file a [Hawai'i Rules of Penal Procedure (HRPP)] Rule 35 motion post-sentencing to present those same factors did not fall outside the range of competence expected of criminal lawyers[,]" majority op. at 511, 229 P.3d at 329, I believe this certiorari proceeding should have been terminated via an order affirming the ICA's judgment on appeal. However, rather than simply affirming the ICA's judgment, the majority—in my view—exploits the certiorari process by creating a new "rule" that is wholly unnecessary to the disposition of Hussein's conviction or sentence, and attempts to justify its grant of Petitioner's application by conjuring up an issue surrounding HRPP Rule 35 under the guise of providing clarification. Therefore, I respectfully dissent from those portions of the majority's opinion.

## I. DISCUSSION

### A. Violation of the Doctrine of Stare Decisis

As related by the majority, Petitioner, at the time of sentencing

> was concurrently serving a ten-year term and two five-year terms of imprisonment. The sentencing judge ordered the ten-year mandatory minimum for the instant matter to run consecutively to the prior ten-year term, as opposed to the prior five-year term. Thus, by virtue of adding the mandatory minimum repeat offender ten-year term for the instant matter to the previous ten-year term already being served, as recognized by the court, "in all of her cases, [Petitioner] will be serving a [twenty]-year term of incarceration."

Majority op. at 499, 229 P.3d at 317. Petitioner contends on application, as she did on direct appeal, that the sentencing court failed to consider running the ten-year-term of imprisonment consecutive to the shorter, prior five-year-term, i.e., that the sentencing court

failed to consider "the kinds of sentences available," HRS § 706–606(3). The majority acknowledges that, because the plain language of HRS § 706–606.5(5) provides that "a sentencing court may order a repeat offender mandatory minimum term to run consecutively to 'any' prior sentence," id. at 500, 229 P.3d at 318 (emphasis added) (footnote omitted), a sentencing judge has the discretion to impose a mandatory minimum term consecutively to the shortest of any previously imposed sentences. Id. at 500, 229 P.3d at 318. Recognizing the Sinagoga presumption—although labeling it as "the 'clear evidence' standard"—as controlling, the majority affirms Petitioner's sentence, stating:

> Under that standard, the [sentencing] court in this case acted correctly with respect to HRS § 706–606, inasmuch as the court heard argument from both parties as to Respondent's motion for consecutive sentences, took notice of the records and files, and reviewed the pre-sentence report. Under the "clear evidence" standard, we cannot conclude the ICA gravely erred in deciding that the court did not err in imposing a consecutive sentence in this respect.

Id. at 503, 229 P.3d at 321.

In Sinagoga, decided in 1996, the ICA reviewed the defendant's challenge to the sentencing court's imposition of three consecutive terms of imprisonment on three counts of terroristic threatening. In imposing the consecutive terms, the sentencing judge:

> orally reviewed [d]efendant's prior criminal record, which included convictions in various jurisdictions for burglary, assault, driving under the influence, and drug and concealed weapon possession. [The sentencing judge] noted that the offenses [d]efendant was charged with in the present case were felonies involving violence, and that [d]efendant was not a young man. [The sentencing judge] then declared that [d]efendant would be "a danger to people, whether in Hawaii or any other state where he happens to be; and that as long as he's free to do so, he's going to continue

to be a danger to both people and to property."

*Sinagoga,* 81 Hawai'i at 425, 918 P.2d at 232. On appeal, the defendant alleged that the sentencing court failed to consider the factors listed in HRS § 706–606(2)(a), (2)(d), and (3).[2] Disagreeing with the defendant, the *Sinagoga* court stated:

> In light of the [trial] court's finding that [d]efendant posed "a danger to people" and if "free[d]" would "continue to be a danger," the court undoubtedly considered "[t]he need for the sentence ... [t]o reflect the seriousness of the offense[s], to promote respect for [the] law, and to provide just punishment...." HRS § 70[6]–606(2)(a). Arguably, the "needed ... correctional treatment" factor in HRS § 706–606(2)(d) *was implicit in the court's sentence of incarceration,* along with the court's consideration of "[t]he kinds of sentences available" as the factor in HRS § 706–606(3) required.
>
> *The fact that a court does not orally address every factor stated in HRS § 706–606 at the time of sentencing does not mean the court failed to consider those factors. The statute contains no requirement that the court expressly recite its findings on the record for each of the factors set forth in HRS § 706–606.* Nevertheless, under HRS § 706–668.5, judges are duty-bound to consider HRS § 706–606 factors before imposing sentence. The information relevant to HRS § 706–606 factors is made available to the judges in pre-sentence reports. HRS § 706–601 (1993). *The law presumes that judges will conscientiously fulfill their duty to obey the directive of HRS § 706–668.5,* and that counsel will offer factor-relevant information at sentencing hearings mandated by HRS § 706–604 (Supp.1992). *Therefore, absent clear evidence to the contrary, it is presumed that a sentencing court, following the receipt of a pre-sentence report under HRS § 706–601 and a mandated sentencing hearing under HRS § 706–604, will have considered all the factors in HRS § 706–606 before imposing concurrent or consecutive terms of imprisonment under HRS § 706–668.5.*

*Id.* at 428, 918 P.2d at 235 (emphases added) (citation and footnote omitted); *see also State v. Vellina,* 106 Hawai'i 441, 449, 106 P.3d 364, 372 (2005), and *State v. Tauiliili,* 96 Hawai'i 195, 199–200, 29 P.3d 914, 918–19 (2001). Accordingly, at least since 1996, it has been the law in this jurisdiction that, "[a]bsent clear evidence to the contrary, *it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706–606."* *Sinagoga,* 81 Hawai'i at 428, 918 P.2d at 235 (emphases added); *Vellina,* 106 Hawai'i at 449, 106 P.3d at 372; *Tauiliili,* 96 Hawai'i at 199–200, 29 P.3d at 918–19.

Clearly, the majority's application of the *Sinagoga* presumption is consistent with the doctrine of *stare decisis,* which is

> "a doctrine that demands respect in a society governed by the rule of law." While the doctrine of stare decisis does not absolutely bind [a c]ourt to its prior opinions, a decent regard for the orderly development of the law and the administration of justice *requires that directly controlling cases be either followed or candidly overruled.*

*Solem v. Helm,* 463 U.S. 277, 311–12, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (Burger, C.J., dissenting, joined by White, Rehnquist, and O'Connor, JJ.) (quoting *City of Akron v. Akron Center for Reproductive Health, Inc.,* 462 U.S. 416, 103 S.Ct. 2481, 2487, 76 L.Ed.2d 687 (1983)) (emphases added). Moreover, this court previously held in *State v. Garcia,* 96 Hawai'i 200, 29 P.3d 919 (2001), that:

> While there is no necessity or sound legal reason to perpetuate an error under the doctrine of stare decisis, we agree with the proposition expressed by the United

---

**2.** Factors (2)(a), (2)(d), and (3) state:
> (2) The need for the sentence imposed:
>> (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
>> ...;

>> (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and]
>> (3) The kinds of sentences available[.]
> HRS § 706–606.

States Supreme Court that **a court should "not depart from the doctrine of stare decisis without** *some compelling justification."* *Hilton v. South Carolina Pub. Ry. Comm'n,* 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (emphasis added). *Cf. Dairy Road Partners v. Island Ins. Co., Ltd.,* 92 Hawai'i 398, 421, 992 P.2d 93, 116 (2000) (stating that "a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it") (internal quotation marks and citations omitted). Thus, when the court reexamines a prior holding, its judgment is customarily informed by a series of prudential and pragmatic considerations designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case. *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 854, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). *In this calculus, considerations of stare decisis have special force in the area of statutory interpretation, for here,* unlike in the context of constitutional interpretation, *the legislative power is implicated,* and the legislative branch remains free to alter what we have done." *Hilton,* 502 U.S. at 202, 112 S.Ct. 560.

*Garcia,* 96 Hawai'i at 206, 29 P.3d at 925 (some emphases in original) (some emphases added) (original brackets and some internal quotation marks omitted).

Here, as in *Sinagoga,* the sentencing court's consideration of the "kinds of sentences [that were] available," HRS § 706–606(3), in this case "was implicit in the court's [ultimately imposed] sentence of incarceration." *Sinagoga,* 81 Hawai'i at 428, 918 P.2d at 235; *see also State v. Lau,* 73 Haw. 259, 260, 831 P.2d 523, 523 (1992) (reasonably inferring from a review of the record that the sentencing court did consider the

sentencing alternatives).[3] Thus, the absence of the sentencing court's explicit statement that it considered all sentencing options, including the option plainly provided in HRS § 706–606.5(5), was not fatal to the validity of Petitioner's sentence because the majority, consistent with the doctrine of *stare decisis,* applied the presumption established in *Sinagoga,* which, as previously stated, has been the "rule of law" in this jurisdiction since 1996, and affirmed Petitioner's sentence. However, curiously, the majority then proceeds to carve out a new "rule" that is not only contrary to the presumption it just applied, but is based entirely on *obiter dictum,* underscoring the fact that its new "rule" is entirely unnecessary and, in turn, has no application to the instant case.

## B. *Obitur Dictum*

"Obiter dictum" is "[a] judicial comment made while delivering a judicial opinion, but *one that is unnecessary to the decision in the case and therefore not precedential* (although it may be considered persuasive)." *Black's Law Dictionary* 1102 (8th ed.2004) (emphasis added). The majority's affirmance of Petitioner's sentence based on the existing presumption in *Sinagoga,*—that was also followed in *Vellina* and *Tauiliili,* 96 Hawai'i 195, 199–200, 29 P.3d 914, 918–19 (2001), and relied upon by the majority, *see* majority op. at 504, 229 P.3d at 322,—underscores the needless exercise in promulgating a new "rule" that is, clearly, "one that is unnecessary to the decision in [*this* ] case and therefore *not precedential*[.]" *Black's Law Dictionary* 1102 (emphases added).

This court has stated that, under the doctrine of *stare decisis,* "it is the duty of all inferior tribunals to adhere to the decision [of a court of last resort], without regard to their views as to its propriety, until the decision has been reversed or overruled by the court

---

3. In *Lau,* the defendant asserted on appeal that "the sentencing court committed reversible error by not stating its reasons for imposing a twenty year sentence [ (as opposed to the special indeterminate term of eight years)]." *Id.* at 260, 831 P.2d at 523. In affirming the defendant's sentence, this court stated:

Our review of the record reveals that the sentencing court had the benefit of a[PSI] report,

the arguments of counsel, which included references to both the ordinary twenty year term and the special indeterminate term of eight years, and [defendant's] personal statement. Thus, *we can reasonably infer that the court did consider the sentencing alternatives[.]*

*Id.* (emphasis added). Consequently, the *Lau* court affirmed the defendant's sentence.

of last resort or altered by legislative enactment." *Robinson v. Ariyoshi*, 65 Haw. 641, 653, 658 P.2d 287, 297 (1982) (citation omitted). However, "an inferior tribunal might not be bound under the doctrine of stare decisis *if the pronouncement of a superior court is actually dictum.*" *Id.* at 654, 658 P.2d at 298 (emphasis added) (citation omitted). Questioning the wisdom of "a rule that accords a statement of a superior court no precedential weight merely because the statement was not necessary to the actual adjudication of the controversy," *id.,* the *Robinson* court opined:

> we think a more constructive approach would be to consider a statement of a superior court binding on inferior tribunals, even though technically dictum, *where it "was passed upon by the court with as great care and deliberation as if it had been necessary to decide it, was closely connected with the question upon which the case was decided, and the opinion was expressed with a view to settling a question that would in all probability have to be decided before the litigation was ended.*"

*Id.* at 655, 658 P.2d at 298 (quoting *Nobrega v. Nobrega*, 14 Haw. 152, 155 (1902)) (emphases added).[4]

Although I concur in the *Robinson* court's "constructive approach" to affording precedential value to statements that are "technically dictum," especially where "the opinion was expressed with a view to settling a question that would in all probability have to be decided before the litigation was ended," *Robinson*, 65 Haw. at 655, 658 P.2d at 298 (citation omitted), such is not the case here where, as discussed *infra*, Petitioner's sentence is affirmed, leaving nothing further to "litigate."

In the case at bar and notwithstanding the fact that the sentencing court did *not* state its reasons for the imposed sentence, the majority concludes that neither the ICA nor the sentencing court erred based on its application of *Sinagoga*. Such conclusion effectively ends Petitioner's "litigation" with respect to her first point of error, and, as a result, the majority's discussion regarding Petitioner's sentence should end there; it does not.

Instead, the majority includes a lengthy discussion that is not only wholly unnecessary to the disposition of the instant case, but inappropriately sets forth a new "rule" mandating that sentencing judges state their reasons for imposing a consecutive versus concurrent sentence, which creates an untenable situation for our sentencing judges, discussed *infra*. Under the "constructive approach" described in *Robinson*, the majority's discussion setting forth its new "rule" is not being "expressed with a view to settling a question that would in all probability have to be decided before the litigation was ended." 65 Haw. at 655, 658 P.2d at 298. Indeed, applying the new "rule" to Petitioner would not end the litigation inasmuch as doing so would require a remand for re-sentencing. On the other hand, by failing to overrule *Sinagoga*, the majority's application of the existing presumption and its conclusion that neither ICA nor the sentencing court erred ends Petitioner's "litigation" with respect to her sentencing.

Nevertheless, the majority asserts that, "despite the absence of any reversible error in the ICA's opinion, when a majority of this court determines to accept certiorari and to issue an opinion that opinion is not 'dicta' merely because it affirms the decision of the ICA." Majority op. at 504, 229 P.3d at 322. Pointing to this court's decisions in *State v. Maluia*, 107 Hawai'i 20, 108 P.3d 974 (2005), and *Korsak v. Hawai'i Permanente Medical Group*, 94 Hawai'i 297, 12 P.3d 1238 (2000),— cases in which the applications for writ of certiorari were granted, judgments affirmed,

---

4. In *Nobrega*, this court observed that:
Perhaps the strongest reason that can be urged in support of the course pursued [here] is that the case [before the court in *Nobrega*] was to go back to the [c]ircuit [c]ourt for further action and that that court would naturally want instructions upon the point in question and that, if such instructions were not given, the case would probably be brought to this court again for the settlement of the question. Under such circumstances, with a view to settling the law of the case once and for all, the court would often be justified in going further than it would under some other circumstances.
*Nobrega*, 14 Haw. at 153–54.

but opinions rendered on issues of first impression—the majority argues: "The dissent does not suggest that the opinions issued in the foregoing cases were merely 'dicta' because the decision of the ICA was affirmed." Majority op. at 515, 229 P.3d at 333 (footnote, citing similar examples, omitted). The majority clearly misses the point.

My belief that the majority's opinion violates the doctrine of *stare decisis* and constitutes dicta is entirely unrelated to any issues regarding this court's power to accept or reject applications for certiorari review but, rather, is based wholly on my belief that the majority's holding here is only tangentially related to the facts presented in this opinion and has no effect on the parties currently before this court. To be clear, what makes the majority's discussion dicta is that its entire discussion underlying the new "rule" is wholly unnecessary to the disposition of Petitioner's first point of error and that the majority resolves the alleged error not by applying the new "rule," but by the application of the existing precedent, *i.e.*, the *Sinagoga* presumption. Thus, in my view, the majority's discussion is merely a thinly veiled attempt to set forth a new rule that is entirely unrelated to the issues that the parties asked this court to decide.

In an apparent attempt to establish a connection between its new "rule" and the disposition of Hussein's case, the majority argues that:

> [Hussein] has indicated that she believed a HRPP Rule 35 motion should have been filed. Inasmuch as we clarify that[,] upon remand, [Hussein] has the opportunity to file a HRPP Rule 35 motion, our holding that the sentencing court would be required to state reasons is germane to [Hussein's] probable [HRPP] Rule 35 motion and, thus, cannot be considered dicta.

Majority op. at 515, 229 P.3d at 333.

In the instant case, however, the majority affirms Hussein's consecutive sentence, agreeing with the ICA that the sentencing court "did not abuse its discretion" in imposing such sentence. *Id.* at 501, 229 P.3d at 319. The majority further holds that "all mitigating factors that were known at the time of sentencing [or alleged by Hussein] were presented to the sentencing court," *id.* at 531, 229 P.3d at 349, and, as a result, Hussein's counsel's decision not to file a HRPP Rule 35 motion "did not fall outside the range of competence expected of criminal lawyers." *Id.* Thus, inasmuch as the aforementioned conclusions by the majority determine questions of law—*i.e.*, whether Hussein's sentence was illegally imposed and whether Hussein's counsel was ineffective—such conclusions constitute the "law of the case." *See State v. Gomes*, 107 Hawai'i 253, 258, 112 P.3d 739, 744 (App.2005) ("[A] determination of a question of law made by an appellate court in the course of an action becomes the law of the case and may not be disputed by a reopening of the question at a later stage of the litigation."). Consequently, were Hussein to raise the same sentencing issues in a HRPP Rule 35 motion on remand, the sentencing court would be bound to follow the conclusions reached by the majority here. In other words, any post-appeal motion Hussein files that questions the validity of her consecutive sentence must be based on legal arguments that are totally different from those previously raised in the instant appeal. Accordingly, I believe, contrary to the majority's view, that it is *not* "probable," as the majority repeatedly contends, that Hussein will file a post-appeal Rule 35 motion.

The majority's argument that the filing of a HRPP Rule 35 motion is "probable" rests solely on the fact that Hussein argued in her application that a HRPP Rule 35 motion "should have been filed." However, based on the law of the case established by the majority opinion and the fact that it is impossible to foretell what actions, if any, Hussein will take post-appeal, the majority's arguments regarding a "probable" HRPP Rule 35 motion filed by Hussein are both legally and factually unsupported and improperly based on mere speculation.

Additionally, the majority concludes, based on *Lau*, that

> the rationale supporting the rules set forth in this case and in *Lau* are *closely analogous*. Also, the dissent's assertion that the "new rule ... [is] wholly unrelated to the issue being 'clarified,' " dissenting op. at

543, 229 P.3d at 361, is incorrect inasmuch as the "new rule" is related to the issues raised on appeal, including a HRPP Rule 35 motion, which "would in all probability have to be decided before the litigation was ended," *Robinson,* 65 Haw. at 655, 658 P.2d at 298.

Majority op. at 516, 229 P.3d at 334 (emphasis added). Putting aside the obvious fact that the majority takes the dissent's position totally out of context, its assertion that the circumstances in *Lau* and the case at bar "are closely analogous" misses the mark.

Admittedly, the issue in *Lau* and in the instant case are nearly identical, *i.e.,* dealing with the sentencing court's failure to state its reasons for the imposed sentence; however, the circumstances surrounding the cases are entirely distinguishable. First, *Lau* was decided pre-*Sinagoga;* thus, the *Lau* court was not bound by an existing precedent as are the ICA and this court here. Second, this court in *Lau* did not have the benefit of reviewing the information contained in the PSI report to assess whether sufficient evidence existed to support the sentencing court's imposed sentence.[5] Here, however, not only are the appellate courts bound by *Sinagoga,* both courts have access to the information in the PSI report from which to assess whether "evidence to the contrary," *Sinagoga,* 81 Hawai'i at 428, 918 P.2d at 235, exists. Thus, the circumstances under which the *Lau* court issued its mandate are clearly distinguishable from the circumstances under which the majority here attempts to establish its new "rule."

Nevertheless, the majority maintains that, "[j]ust as the mandate set forth in *Lau* is manifestly *not* dicta, but a clear requirement binding on the courts, we confirm without qualification that the mandate set forth herein is not dicta, but binding precedent." Majority op. at 516, 229 P.3d at 334 (emphasis in original). Simply declaring that the new "rule" is not dicta and, therefore, binding precedent does not make it so where such "rule" is not necessary to the disposition of the case and is not being applied to Petitioner, herself. The majority, however, points out that this court's new rule in *Tachibana v. State,* 79 Hawai'i 226, 900 P.2d 1293 (1995) (requiring trial judge to engage in an on-the-record colloquy with defendant to ensure waiver of right to testify), was likewise not applied retrospectively. Majority op. at 518, 229 P.3d at 336 n. 31 (citing *Tachibana,* 79 Hawai'i at 238, 900 P.2d at 1305). Again, the majority misses the point.

I recognize that appellate courts do not always apply new pronouncements retrospectively where such application would create a significant burden on the administration of justice. However, assuming for the sake of argument that the majority's new "rule" has any precedential application whatsoever given its dicta-based creation, the question of retrospective application would arise only if the presumption in *Sinagoga* were overruled. By not doing so, any issue regarding a defendant's consecutive sentence where the trial court failed to explicitly state its reasons would be governed by *Sinagoga*—whether arising pre-or post-new "rule"—because (1) the presumption is still good law and (2) its application would not only be consistent with

---

5. In *Lau,* this court observed that "traditionally the [PSI] report is not admitted into evidence or made part of the record on appeal," 73 Haw. at 264, 831 P.2d at 526, and that "such practice complies with HRS § 806-73, which provides that ... [PSI] reports 'are confidential and are not public records.'" *Id.* This court further stated that

had the pre-sentence report been made part of the record in this case (and ordered sealed to comply with the confidentiality requirement of HRS § 806-73), our review of the report could have been helpful in determining all of the specific factors which the sentencing court had before it when it considered the sentencing alternatives.

*Id.* at 264–65, 831 P.2d at 526. Thus, the *Lau* court mandated that, henceforth, all PSI reports be made part of the record and ordered sealed in order to "facilitate appellate review." *Id.* Notwithstanding the fact that the issue squarely before the court was the sentencing court's failure to state its reason for the imposed sentence, the *Lau* court did not mandate that sentencing courts do so. Instead, this court merely "urged and strongly recommended that the sentencing court [state its reasons] and to also state that sentencing alternatives were considered," *id.* at 263, 831 P.2d at 525, recognizing that *"there is no requirement for the sentencing court to state its reasons for imposing sentence." Id.* (emphasis added).

the doctrine of *stare decisis*, but would require adherence. *See Solem*, 463 U.S. at 312, 103 S.Ct. 3001 (stating that "directly controlling cases be ... followed").

The majority also cites to *State v. Huelsman*, 60 Haw. 71, 91, 588 P.2d 394, 407 (1978), as support for its position that promulgation of a new rule is appropriate even where such rule is "not necessary to the disposition of the case," majority op. at 520, 229 P.3d at 338. However, *Huelsman*, as discussed below, does not support the majority's position.

As indicated by the majority, the defendant in *Huelsman* challenged the sentencing court's imposition of an extended sentence, contending that the extended term statute-HRS § 706–662 (1978) [6]—was vague and overbroad. 60 Haw. at 80, 588 P.2d at 400. The *Huelsman* court agreed with the defendant that the term "warranted" was an "unduly broad term" that rendered the statute unconstitutional. *Id.* at 91, 588 P.2d at 406. However, the *Huelsman* court remedied the infirmity in the statute through judicial construction by substituting "the more limited standard 'necessary for protection of the public'" for the word "warranted." *Id.* The *Huelsman* court then went on to state that:

> The record in these cases [7] does not disclose that the sentencing judge gave any consideration to protection of the public as a reason for imposing the extended terms, as distinguished from the purely retributive purpose of enhancing the punishment inflicted on appellant for his offenses. *We find it necessary, therefore, to ... remand these cases for resentencing in light of this opinion* and need not deal in detail with appellant's contentions with respect to the extended term sentence proceedings from which these appeals are taken.

> The present appeal exemplifies how difficult it may be to determine from the record of an extended term sentence hearing whether the discretion of the sentencing court was exercised within the statutory guidelines. The practice followed by sentencing courts of entering conclusory findings in the language of the applicable subsection of s 662 tends to force upon this court a choice between treating the sentencing decision as essentially non-reviewable or involving itself unduly in the exercise of sentencing discretion. Accordingly, *we direct that in further proceedings in these cases, and in all other cases in which appeals may hereafter be taken from extended term sentences, the sentencing court shall state on the record its reasons for determining that commitment of the defendant for an extended term is necessary for protection of the public and shall enter into the record all findings of fact which are necessary to its decision.* The record in each such case shall include the presentence report and all evidence considered by the sentencing court.

*Id.* at 91–92, 588 P.2d at 407 (emphases added).

Thus, although the *Huelsman* court did set forth a new rule "mandat[ing] that sentencing courts state their reasons for imposing an enhanced sentence on the record," majority op. at 519, 229 P.3d at 337, such rule was—contrary to the majority's new "rule" in the instant case—directly relevant to the disposition of the defendant's case. Indeed, in that case, the court vacated the defendant's sen-

---

**6.** At the time *Huelsman* was decided, HRS § 706–662 stated in relevant part that:

> The court may sentence a person who has been convicted of a felony to an extended term of imprisonment if it finds one or more of the grounds specified in this section. The finding of the court shall be incorporated in the record.
>
> . . . .
>
> (4) Multiple offender. *The defendant is a multiple offender whose criminality was so extensive that a sentence of imprisonment for an extended term is warranted.* The court shall not make such a finding unless:

> (a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or
> (b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively would equal or exceed in length the maximum of the extended term imposed, or would equal or exceed forty years if the extended term imposed is for a class A felony.
> (Emphases added.)

**7.** I note that *Huelsman* dealt with an appeal from four separate cases.

tence and *remanded the case for resentencing in conformity with its opinion.* 60 Haw. at 92, 588 P.2d at 407. Accordingly, the new rule set forth by this court in *Huelsman* was not only relevant to the disposition of the case but it was directly applicable to the defendant. In contrast, the majority opinion here *affirmed Hussein's sentence* by applying the existing precedent, *i.e.,* the *Sinagoga* presumption. Consequently, the instant case, as I have repeatedly stated, should have ended with the affirmation of Hussein's sentence.[8]

In sum, because the entirety of the majority's extensive discussion, attempting to justify its new "rule," constitutes *obiter dicta,* the "rule" clearly has no precedential value. In fact, the most that can be said of the majority's new "rule" is that it is merely a restatement of the "urg[ing] and [strong] recommend[ation]" in *Lau* that sentencing courts state their reasons for the imposed sentence and to also state that sentencing alternatives were considered. *See* majority op. at 503–04, 229 P.3d at 321–22 (citing *Lau,* 73 Haw. at 263, 831 P.2d at 525).

## C. *Placing Sentencing Courts At Risk*

As importantly, I have grave concerns that the majority's new "rule" creates an untenable situation for our sentencing judges. In conscientiously attempting to comply with the majority's new "rule" that they state specific reasons for imposing a consecutive sentence, our sentencing judges may unwittingly divulge confidential information gleaned from PSI reports in contravention of HRS § 806–73.

It is well-settled that, "[i]n ordinary sentencing situations, the sentencing court is given a great deal of discretion to fashion an 'individualized' sentence, 'fitted to the personal characteristics of the defendant,' and 'the particular circumstances of [the] defendant's case.'" *State v. Pantoja,* 89 Hawai'i 492, 498, 974 P.2d 1082, 1087 (App.1999) (citations and footnote omitted). As more aptly

stated by the United States Supreme Court in *Solem,* "[r]eviewing courts, of course, should grant substantial deference to ... the discretion that trial courts possess in sentencing convicted criminals." 463 U.S. at 290, 103 S.Ct. 3001; *see also State v. March,* 94 Hawai'i 250, 254, 11 P.3d 1094, 1098 (2000) (sentencing court given broad discretion in sentencing defendants); *State v. Akana,* 10 Haw.App. 381, 386, 876 P.2d 1331, 1334 (1994) (sentencing court is afforded wide latitude in the selection of penalties from those prescribed and in the determination of their severity (internal quotation marks and citations omitted)). Moreover, "[i]n any system which vests discretion in the sentencing authority, it is necessary that the [sentencing court] have sufficient and accurate information so that it may rationally exercise its discretion. Such information is provided in a [PSI] report[.]" *Lau,* 73 Haw. at 262, 831 P.2d at 525 (citations and internal quotation marks omitted).

Pursuant to HRS § 706–602(1) (1993), the PSI report must contain the following information:

(a) An analysis of the circumstances attending the commission of the crime;

(b) The defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status and capacity to make restitution or to make reparation to the victim or victims of the defendant's crimes for loss or damage caused thereby, education, occupation, and personal habits;

(c) Information made available by the victim or other source concerning the effect that the crime committed by the defendant has had upon said victim, including but not limited to, any physical or psychological harm or financial loss suffered;

(d) Information concerning defendant's compliance or non-compliance with any order issued under section 806–11

---

8. The majority attempts to bolster its reliance on *Huelsman* based on its prediction that Hussein will probably file a post-appeal HRPP Rule 35 motion. However, as previously discussed, the majority's prediction is legally and factually un-

supported and improperly based on mere speculation. Consequently, I continue to believe that the majority's reliance on *Huelsman* is misplaced.

[ (regarding the disposal of firearms) ]; and

(e) Any other matters that the reporting person or agency deems relevant or the court directs to be included.

In 1985, the legislature considered "A Bill [ (S.B. No. 249) ] for an Act Relating to the Confidentiality of Adult Probation Records" and indicated that

> [r]ecords [ (*i.e.*, case records and PSI reports) ] originated by adult probation officers pursuant to the duties and powers already established in section 806–73, Hawaii Revised Statutes, are not clearly and expressly confidential. This fact sometimes hampers adult probation officers in the performance of their duties. This bill makes explicit the documents which can be released and to whom they can be released.

Conf. Comm. Rep. No. 14, in 1985 Senate Journal, at 852; Conf. Comm. Rep. No. 24, in 1985 House Journal, at 894. Consequently, HRS § 806–73 now provides that "*[a]ll adult probation records shall be confidential and shall not be deemed to be public records.* As used in this section, the term 'records' includes, but is not limited to, all records made by any adult probation officer in the course of performing the probation officer's official duties." *See also Lau*, 73 Haw. at 264, 831 P.2d at 526 (recognizing that PSI reports are traditionally not admitted into evidence or made part of the record on appeal because such practice complies with HRS § 806–73) (emphasis added). However, the confidentiality of PSI reports is not absolute inasmuch as the statute also provides that "[t]he records, *or the content of the records*," shall not be divulged *except* to certain individuals or entities specifically described therein. *See* HRS § 806–73(b)(1) through (7) (listing the defendant, defendant's counsel, and the prosecuting attorney, as well as entities or organizations involved in the custody, care, and/or treatment of the defendant) (emphases added).

In 2006, when considering further revisions to HRS § 806–73 "to add persons and entities to the list of those who are allowed access to adult probation records," Sen. Stand. Comm. Rep. No. 2250, in 2006 Senate

Journal, at 1134, the Committee on Judiciary and Hawaiian Affairs noted its concerns "regarding a defendant's privacy and the ability of case management, assessment, or treatment providers to use information in a defendant's adult probation records to selectively grant certain defendants access to a treatment program." *Id.* To address those concerns, the Committee amended the measure (generally limiting disclosure of certain types of information) "to balance privacy and other issues," *id.*, which amendments were eventually adopted.

As observed by the American Bar Association (ABA) in its commentary to standards related to confidentiality of PSI reports:

> The willingness of persons to respond fully and candidly to preparers of presentence reports is affected by the expectation as to the ultimate distribution of those reports. Among the sources from whom information may be sought about individual defendants are the defendants themselves, members of their families, and others who may have significant information, relevant to sentencing, about the defendants' private lives. It is in the public interest to encourage disclosures of information by the assurance that the information will not be made available generally to the public. Offenders have a right to privacy on matters not connected to the offenses of which they have been convicted. *No legitimate interests are served by making the contents of presentence reports routinely a matter of public record. ...*
>
> . . . .
>
> It almost goes without saying that the presentence reports should be available to sentencing courts and to appellate courts reviewing sentences. Of course, *reports should be made available in a manner that does not incorporate them into the open records of the cases.*

*ABA Standards for Criminal Justice: Sentencing* at 186, Standard 18–5.6 (3d ed.1994) (emphases added). Relatedly, ABA Standard 18–5.21, which addresses the contents of presentence reports, provides in relevant part: "(b) The rules should establish appropriate measures to protect the privacy of offenders or victims with regard to *informa-*

*tion, included in sentence reports, that is not otherwise a matter of public record." Id. at 216 (emphasis added).* The Commentary states:

Paragraph (b) cautions that the raw data included in the sentence reports may include information about offenders and victims and about other persons that is not a matter of public record. Individuals' privacy should be protected against unwarranted disclosures. Sentence reports should be open to persons with satisfactory reasons for access to the raw data only on conditions that take privacy concerns adequately into account.

*Id.* at 217–18.

The foregoing underscores my fear that sentencing judges, in conscientiously attempting to comply with the majority's new "rule", may unwittingly violate the legislative intent and statutory mandate. Although I acknowledge that this court has previously urged and recommended that our sentencing courts state the reasons for the imposed-sentence and that sentencing alternatives were considered, *see, e.g., Lau,* 73 Haw. at 263, 831 P.2d at 525, I recognize the dilemma that we may have placed them in by making such a recommendation that will now be exacerbated by the majority's new "rule", *i.e.,* compelling them to disclose confidential "raw data" gleaned from a PSI report that the legislature via the enactment of HRS § 806–

73 has declared to be confidential from public disclosure. Curiously, the majority, although setting forth a mandatory "rule" that compels our sentencing courts to state its reasons for the imposed sentence, states "we do not require specific findings of fact." Majority op. at 517, 229 P.3d at 335 n. 15. Assuming that the distinction in the majority's view is that "findings of fact" need not be separately prepared in writing and filed, I see no material distinction between requiring oral findings of facts versus written findings of facts.[9] Compelling our sentencing judges to state such findings on the record will increase the chances of breaching the confidentiality of the information contained in PSI reports.

Moreover, the new "rule" announced today by the majority not only trespasses upon a sentencing court's discretion, but will create confusion for our sentencing judges. The majority's holding today begs the question: "How will the new 'rule', henceforth, co-exist with the un-overruled presumption in *Sinagoga?*" To illustrate, assume a sentencing court fails to state its reasons for imposing a consecutive sentence on the record as required under the majority's decision in this case. The defendant then appeals the sentence, arguing that the sentencing court violated "the *Hussein* 'rule.'" Based upon the majority's holding today, it is unclear what

9. As previously stated, the *Sinagoga* court observed that there is no statutory requirement "that the court expressly recite its findings on the record for each of the factors set forth in HRS § 706–606." *Sinagoga,* 81 Hawai'i at 428, 918 P.2d at 235. In that case, however, the ICA also observed that the sentencing judge

orally reviewed Defendant's prior criminal record, which included convictions in various jurisdictions for burglary, assault, driving under the influence, and drug and concealed weapon possession. [The sentencing judge] noted that the offenses Defendant was charged with in the present case were felonies involving violence, and that Defendant was not a young man. [The sentencing judge] then declared that Defendant would be "a danger to people, whether in Hawaii [Hawai'i] or any other state where he happens to be; and that as long as he's free to do so, he's going to continue to be a danger to both people and to property."

*Id.* at 425, 918 P.2d at 232. If the above-quoted "reasons" would satisfy the majority's new "rule," I fail to see how such "reasoning"—that

simply parrots or repeats the language of the factor itself—is "essential to meaningful appellate review." Majority op. at 528, 229 P.3d at 346 (quoting Commentary to ABA Standard 18–5.19). Indeed, the "reasons" articulated in *Sinagoga* did not engender the "rule" that the majority now seeks to impose. To the contrary, it engendered the presumption itself.

In my view, the most critical tool that is "essential to appellate review" is the PSI report, which is now available due to the mandate in *Lau* that the report be sealed and made part of the record. Given the presumption in *Sinagoga* that the sentencing court considered the factors enumerated in HRS § 706–606, the appellate court's task is to review the PSI report, including the evidence presented and the arguments made by counsel at the sentencing hearing, and then decide whether there is sufficient support in the record for the imposed sentence, *i.e.,* that the sentencing court did not abuse its discretion. The majority's new "rule" that compels sentencing judges state their reasons is not "essential to appellate review," it simply makes it easier.

the reviewing court should do. For example, should the reviewing court apply the presumption inasmuch as the presumption is still good law? Or, would a violation of the *Hussein* "rule" require the reviewing court to ignore the presumption, vacate the sentence imposed, and remand the case for a new sentencing hearing? In my view, therein lies the fundamental flaw in the majority's holding—the presumption and the new "rule" cannot co-exist without creating a dilemma for both the reviewing courts and the sentencing judges, as well as confusion for the Bar.[10]

If, for example, a sentencing judge's "reasons" for imposing a consecutive sentence is based on confidential information gleaned from the PSI report, such as the defendant's "history of delinquency," "mental condition," "family situation," "personal habits," or other such information not available from public records,[11] the new "rule" places our sentencing judges in an untenable situation: (1) they could comply with the new "rule" by reciting their specific reasoning, including the information gleaned from the PSI report upon which they relied, and, thus, risk violating the confidentiality of the PSI report; or (2) they could ignore the majority's new man-

date and not recite any specifics, thereby preserving confidentiality; or (3) they could attempt to comply with the majority's new mandate *and* HRS § 806–703 by providing *some but not all* of its reasoning, thereby honoring confidentiality. Doing the former (*i.e.*, scenario (1) above) would place the confidentiality of PSI reports in jeopardy and violate the legislative intent; doing the latter (*i.e.*, scenarios (2) or (3) above) could result in reversal either for failure to state reasons as mandated by the new "rule" or because, in the eyes of the reviewing court, the stated-reasons were insufficient. Not only is it unfair to place our judges in such a situation, I believe it insulting to them to have the appellate courts intrude into an area where great deference has been recognized and afforded. Indeed, as the court in *Sinagoga* observed, "[t]he law presumes that judges will conscientiously fulfill their duty to obey the directive of HRS § 706–668.5. *Sinagoga*, 81 Hawai'i at 428, 918 P.2d at 235. Thus, given the appellate court's ability to review the (1) PSI report made part of the record pursuant to the *Lau* mandate and (2) transcripts of the sentencing hearing, coupled with the presumption in *Sinagoga*, the majority's new "rule" is wholly unwarranted.[12]

---

10. The majority believes that my view "stems from [my] confusion between the requirement in HRS § 706–668.5 that the court *consider* all of the HRS § 706–606 *factors* before imposing a consecutive *or* concurrent sentence, and the requirement expressed [in the majority's opinion] that the court state its *reasons* for imposing a consecutive sentence." Majority op. at 519, 229 P.3d at 337 (emphases in original). To the contrary, my position is grounded in my belief that requiring the sentencing court to explain the "reasons," *i.e.*, to articulate the specific findings that support the factors upon which the sentencing court relied, would be unnecessary given (1) the presumption espoused in *Sinagoga* that the sentencing court "considered all the factors in HRS § 706–606 before imposing concurrent or consecutive terms of imprisonment under HRS § 706–668.5," 81 Hawai'i at 429, 918 P.2d at 236, and (2) the deference afforded to sentencing courts, *id.* (citing *State v. Akana*, 10 Haw.App. 381, 386, 876 P.2d 1331, 1334 (1994)).

11. I note that, although information regarding a defendant's adult criminal convictions, including the conviction for which he or she is currently being sentenced, are subjects covered in the PSI report, the same information can be ascertained from the records of the underlying criminal

cases, which are public records. Thus, I am not concerned about divulging information about a defendant's prior adult criminal record.

Moreover, I am not—as the majority curiously asserts—suggesting that: (1) the judge should be "precluded from relying upon [any] information in the PSI"; or (2) "no court, no prosecutor, and no defense attorney could reference any information in the PSI regardless of the type of sentencing proceeding." Majority op. at 526, 229 P.3d at 344. I am merely asserting that the sentencing judge should not be forced to violate the confidentiality provisions of the PSI laws by having to set forth clearly confidential information into the public record. Indeed, I am gravely concerned that the majority believes that such action by the sentencing court would be appropriate.

Additionally, the majority mischaracterizes the dissent's position when it argues that "prior offenses or police reports" "are not pub[l]ic records *despite the dissent's statement to the contrary.*" *Id.* (emphasis added). To be clear, I reiterate that I am *not* concerned about information regarding a defendant's *adult criminal convictions* inasmuch as such information, *i.e.*, the defendant's various criminal court case files, are accessible to the public, unless they have been sealed by the court.

Accordingly, I continue to believe that the majority's new "rule" cannot co-exist with the presumption, and the majority's holding falls just short of explicitly overruling it.

### D. *The Majority's Commentary on HRPP Rule 35*

The majority states that,

[b]ecause the ICA ruled on counsel's failure to file a Rule 35 motion *prior* to initiation of appellate proceedings, **one may be left with the impression that the time for filing had expired.** Indeed, subsequent to the ICA's SDO, Petitioner indicates [in her application] that "[t]he Hawai'i rule retains the [c]ourt's jurisdiction to reduce a sentence if the motion is filed prior to the notice of appeal[,] and thus, "due diligence required such a motion." **Petitioner therefore apparently believes that because counsel failed to file a HRPP Rule 35 motion, she has lost that opportunity.**

Majority op. at 512, 229 P.3d at 330 (underscored emphases in original) (bold emphases added). I disagree.

In her application, Petitioner specifically argues:

Contrary to the ICA's footnote 3 [ (commenting on the similarities between the federal Rule 35 and Hawaii's Rule 35, except with regard to the time limitations for bringing such motion) ], there is a crucial distinction between the federal and Hawai'i Rule 35 provision. *The Hawai'i rule retains the lower [c]ourt's jurisdiction to reduce a sentence if the motion is filed prior to the notice of appeal.* [Petitioner] contends, due diligence required such a motion.

(Emphasis added.) Contrary to the majority's pure speculation that "one *may* be left with the impression that the time for filing [a Rule 35 motion] had expired[,]" and that Petitioner, "therefore[,] *apparently* believes that[,] because counsel failed to file a HRPP Rule 35 motion, she has lost that opportunity[,] *id.* (emphases added), nowhere in her application does she indicate such belief. All that can be gleaned from Petitioner's application is that she believed the mere failure to file a Rule 35 motion prior to the notice of appeal amounted to ineffective assistance of counsel.

Moreover, there is absolutely nothing in the ICA's SDO that could reasonably be interpreted as suggesting that, "because counsel failed to file a HRPP Rule 35 motion, Petitioner has lost that opportunity." *Id.* The ICA's entire analysis with regard to Petitioner's contention that counsel's failure to file a Rule 35 motion constituted ineffective assistance consists of the following:

Finally, we note that in *Shraiar v. United States*, 736 F.2d 817 (1st Cir.1984), a defendant claimed that counsel failed to file a motion for reduction of his sentence, pursuant to Federal Rules of Criminal Procedure 35(b).[3] 736 F.2d at 818. The court in *Shraiar* stated:

The rule does not suggest that a motion should be filed automatically in every case. To the contrary, the Advisory Committee's note indicates that such a

---

**12.** Indeed, the majority's discussion of *State v. Chavira*, No. 29082 (Haw.App. Feb. 25, 2009) (s.d.o.), clearly demonstrates how sentencing judges can unwittingly (and, undoubtedly, under the majority's new rule *will*) violate the legislative intent and statutory mandate regarding the confidentiality of the information contained in PSI reports. Presumably, in attempting to comply with the urging of the *Lau* court to state its reasons for the imposed sentence, the *Chavira* court divulged detailed information contained in the PSI report regarding the defendant's personal and family history. Because the PSI report is sealed and made part of the record, the sentencing court could have simply referred to the defendant's personal and family history *in general terms,* indicating that the basis of which is con-

tained in the PSI report, and the appellate court could itself have simply reviewed the PSI report to ascertain if it contained sufficient basis to support the sentencing court's conclusions.

Additionally, the majority's discussion of *State v. Heggland*, 118 Hawai'i 425, 193 P.3d 341 (2008), which involved issues surrounding the defendant's prior conviction in Colorado, is inapposite because, as noted *supra*, information regarding a defendant's adult criminal convictions, although contained in a PSI report, can be ascertained from the public records of the underlying criminal cases. Therefore, divulging specific details regarding a defendant's prior adult criminal record does not violate the legislative intent nor the mandate of HRS § 806–73.

motion would normally be accompanied by "evidence, information, and argument to support a reduction in sentence." No court has held that failure to file such a motion automatically constitutes ineffective assistance of counsel.

*Id.* We reject [Petitioner]'s argument that defense counsel's failure to file an HRPP Rule 35 motion to develop additional mitigating factors rendered counsel's representation constitutionally ineffective in this case.

3. Fed.R.Crim.P. 35(b) is similar to a Motion for Reduced Sentence under HRPP Rule 35(b) except the federal rule provides 120 days to file the motion, whereas the Hawai'i rule provides 90 days.

SDO at 7. One need only read Rule 35 to understand—as even the majority acknowledges—that "the plain language of ... Rule 35(b) ... allows the reduction of a sentence 'within 90 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal[.]'" Majority op. at 512, 229 P.3d at 330. In other words, Petitioner has not "lost that opportunity," majority op. at 512, 229 P.3d at 330; once this appeal is completed, Petitioner is free to file a Rule 35 motion.

Finally, although I recognize that this court has granted certiorari in the absence of any error in order to provide clarification, none of the cases relied upon by the majority, *see id.* at 513, 229 P.3d at 331, promulgated a new rule on an issue wholly unrelated to the issue being "clarified," as the majority does here. The majority maintains that,

> despite "[f]inding no reversible error," and "affirm[ing the] appellant's sentence[,] this court set forth a new rule "mandat[ing] that the sentencing court make [the presentence] report part of the record in all cases where a pre-sentence report has been prepared and that the report be sealed." *Lau,* 73 Haw. at 264, 831 P.2d at 526. . . .
>
> . . . As in *Lau,* we may impose measures related to improving the administration of justice where the facts of the case warrant.

Majority op. at 515–16, 229 P.3d at 333–34. However, the majority's reliance on *Lau* is

unavailing inasmuch as the new "rule" set forth in that case was directly related to the issue on appeal, *i.e.,* whether the sentencing court, in imposing a twenty year term of imprisonment, considered an eight year sentencing option under the young adult defendants statute for which he was qualified. 73 Haw. at 259–60, 831 P.2d at 523–24. This court affirmed the sentence imposed, holding that its

> review of the record reveal[ed] that the sentencing court *had the benefit of a presentence report,* the arguments of counsel, which included references to both the ordinary twenty year term and the special indeterminate term of eight years, and [the defendant]'s personal statement," and, thus, it could be reasonably inferred that "the sentencing court did consider the sentencing alternatives.

*Id.* at 260, 831 P.2d at 524 (emphasis added). Because the pre-sentence report—which the sentencing court had the benefit of reviewing, but the appellate court did not—was not included in the record on appeal, the *Lau* court instructed that, henceforth, "the sentencing court [should] make the [pre-sentence] report part of the record in cases where a pre-sentence report has been prepared and that the report be sealed." *Id.* at 465, 831 P.2d at 526. Thus, the new rule in *Lau* was directly related to the issue on appeal.

To the contrary, the issue purportedly being clarified here is related to Petitioner's purported belief that, "because counsel failed to file a HRPP Rule 35 motion, she has lost that opportunity." Majority op. at 542, 229 P.3d at 360. As such, the majority "find[s] it necessary to clarify the ICA's opinion with respect to HRPP Rule 35." *Id.* Clearly, the majority's new "rule" requiring the sentencing court state its reasons for imposing a consecutive as opposed to a concurrent sentence is wholly unrelated to the issue purportedly being clarified. Thus, the majority's efforts to justify its "clarification" regarding HRPP Rule 35 by invoking an entirely baseless impression allegedly gleaned from Petitioner's application and the ICA's SDO is—in my view—untenable. Equally untenable is the fact that the majority, upon

accepting Petitioner's application under the guise of providing a "clarification" with respect to Rule 35, then exploits the certiorari process by promulgating a new "rule" that, as previously discussed, violates the doctrine of *stare decisis* and is based entirely on dicta.

## II. *CONCLUSION*

Based on the foregoing, I concur in the majority's affirmance of the sentence imposed upon the Petitioner. I cannot agree, however, with the majority's new "rule," mandating the sentencing court to state specific reasons when imposing a consecutive sentence—without overruling the long-standing presumption set forth in *Sinagoga*—because it violates the doctrine of *stare decisis*. Moreover, the majority's entire discussion of its new "rule" is *obiter dicta, i.e.,* not necessary to the actual adjudication of this case, has no precedential value and is, thus, not binding on our sentencing courts. The majority's attempt to bolster the viability of its new "rule" based on its prediction that Hussein will probably file a post-appeal HRPP Rule 35 motion is factually and legally unsupported and based on mere speculation. I also believe that, given the plain language of HRPP Rule 35, the ICA's disposition with regard to the HRPP Rule 35 motion does not require clarification. The majority's attempt to justify its commentary on HRPP Rule 35 under the guise of an unwarranted clarification is, in my view, wholly inappropriate. Inasmuch as I concur in the majority's conclusions that neither the ICA nor the sentencing court erred, I would affirm the ICA's judgment on appeal via order without further comment.